**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Gerald Lee FLETCHER, Defendant–Appellee.**

No. 93–3294.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 29, 1993.

Decided Jan. 31, 1994.

Rehearing Denied March 30, 1994.

Nancy L. Kelley (argued and briefed), Office of the U.S. Atty., Cleveland, OH, for plaintiff-appellant.

Debra K. Migdal (argued and briefed), Federal Public Defender's Office, Cleveland, OH, for defendant-appellee.

Before: BOGGS and SILER, Circuit Judges; and CHURCHILL, Senior District Judge.[*]

BOGGS, Circuit Judge.

The United States appeals the district court's decision to depart downward in sentencing the defendant, Gerald Lee Fletcher, for bank robbery. The United States argues that the district court's downward departure was unreasonable and unwarranted. Because we find that the district court's decision to depart downward in Fletcher's case did not violate the Sentencing Guidelines, we affirm the district court's order.

## I

On the evening of September 12, 1991, Fletcher was drinking vodka and using cocaine; he continued to abuse these drugs into the morning of September 13. Fletcher used money belonging to someone else to pay for his excesses. As he was driving home, Fletcher realized that he needed to recoup the money he had spent. When he drove past the National City Bank in Cleveland, he decided to rob it.

Fletcher parked across the street from the bank and wrote on a matchbook, "10's, 50's, no more no less, nothing to lose." Fletcher then walked into the bank. A security guard told him that he could not smoke in the bank, so he went out, discarded his cigarette, and came back in. He stood in line and when his turn came, he handed the teller the note he had written. The teller gave Fletcher approximately $400. Fletcher left the bank, and on his way home, stopped to get more to drink.

Although the FBI obtained Fletcher's photograph from the bank's surveillance cameras, the FBI was unable to identify him. In June 1992, however, the FBI received a tip that Fletcher committed the robbery. The

* The Honorable James P. Churchill, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

teller identified Fletcher from a photograph line-up; after Fletcher was arrested, he cooperated fully with the FBI.

Prior to his arrest, however, Fletcher apparently began to realize that he was on the road to ruin. In November 1991, Fletcher voluntarily admitted himself to a hospital for detoxification. This course of treatment was unsuccessful, and Fletcher again entered a detoxification program in April 1992. During this latter stay, Fletcher was referred for psychiatric treatment on a follow-up basis and was prescribed antipsychotic drugs. He was diagnosed as schizophrenic.

After Fletcher was arrested, the pre-sentencing report ("PSR") noted that he was cooperative and penitent. The PSR assigned a base offense level of 20, added 2 levels because the object of the robbery was a financial institution, pursuant to U.S.S.G. § 2B3.1, and reduced the offense level by three levels for acceptance of responsibility. Fletcher's total offense level was thus 19. The PSR assigned nine criminal history points, which resulted in a criminal history category of IV. At this point, the sentence range was 46–57 months.

The PSR, however, also found that Fletcher was a career offender within the meaning of U.S.S.G. § 4B1.1. This determination was based on Fletcher's conviction for aggravated assault in May 1976[1] and felonious assault in March 1985. This determination automatically placed Fletcher in criminal history category VI and increased his base offense level to 32, pursuant to U.S.S.G. § 4B1.1(C). The PSR then reduced the base offense level by three for Fletcher's acceptance of responsibility, giving him a total offense level of 29. The sentence range rose from 46–57 months to 151–188 months. The PSR noted, however, that the career offender section of the guidelines might over-represent Fletcher's criminal history.

Prior to sentencing, Fletcher filed a motion to suppress the 1976 and 1985 convictions. The district court denied his motion. The district court then heard arguments on Fletcher's request for a downward departure. Fletcher argued that the criminal history category overstated his propensity for crime, that he had made extraordinary rehabilitation efforts, and that he was the sole caretaker of his two elderly parents, both of whom were ill.

The district court found that

the career offender status does in reality overstate [Fletcher's] criminal record. The record has been compiled over a protracted period of time. The felonious assault reduced to aggravated assault was an offense committed in 1976. The next serious offense was committed in 1985. And apparently the defendant stayed out of trouble with the exception of an indictment for theft that came down in 1991.

So the Court will depart. The Court will keep the offense level at 19, but the Court will sentence him on the basis of a criminal history category of Roman Numeral V rather the Roman Numeral IV. I believe to depart all the way back and totally ignore the career offender statute is inappropriate.

So, I'm going to increase the criminal history category. I'm going to depart downward from six to five and back to the offense level of 19.

The court determined that the appropriate sentence range was 57–71 months, and it sentenced Fletcher to 60 months in prison and five years supervised release.

The United States then filed this timely appeal.

## II

■ The United States contends that the district court erred when it considered

1. In computing convictions for the purpose of assessing career offender status, the Guidelines include "[a]ny prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense" and "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period." U.S.S.G. § 4A1.2(e)(1).

Although Fletcher was convicted in May 1976, he was incarcerated until May 1977, thus bringing this conviction within the provisions of U.S.S.G. § 4A1.2(e)(1).

the age of one of Fletcher's convictions as a factor justifying departure. We use a three-part analysis, which we first adopted in *United States v. Joan,* 883 F.2d 491 (6th Cir. 1989), to determine if the district court reasonably departed from the guidelines. We first determine if the " 'case is sufficiently "unusual" to warrant a departure.' " *United States v. Brewer,* 899 F.2d 503, 506 (6th Cir.) (quoting *United States v. Diaz–Villafane,* 874 F.2d 43, 49 (1st Cir.1989)), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990). This first step is purely a question of law and is reviewed under a *de novo* standard. *Brewer,* 899 F.2d at 506.

■ Second, we determine whether circumstances that would warrant departure actually exist in the particular case. *Ibid.* This step is a matter of factfinding and the district court's determinations are reviewed for clear error. *Ibid.*

Finally, we must decide if the district court's departure is reasonable. *Ibid.;* 18 U.S.C. § 3742(f). " 'Reasonableness is determined by comparing the reasons for imposing a given sentence in general with the reasons for imposing a sentence in the particular case, as stated by the District Court.' " *United States v. Feinman,* 930 F.2d 495, 502 (6th Cir.1991) (quoting *United States v. Belanger,* 892 F.2d 473, 475 (6th Cir.1989)). However, "except to the extent specifically directed by statute, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.' " *Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341 (1992) (quoting *Solem v. Helm,* 463 U.S. 277, 290 n. 16, 103 S.Ct. 3001, 3009 n. 16, 77 L.Ed.2d 637 (1983)).

A district court may depart from the sentencing guidelines if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). A district court may depart downward in cases where the court concludes "that a defendant's criminal history category

significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3, p.s. A departure is limited to "circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism. . . ." U.S.S.G. § 4A1.3, p.s., comment. (backg'd.). The policy statement also provides a ratcheting method for departures under this section: the district court must "use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." U.S.S.G. § 4A1.3, p.s.

In *United States v. Feinman, supra,* we affirmed the district court's decision to depart upward where the court had before it evidence that the seriousness of the defendant's record and his likelihood of recidivism was much greater than his criminal history category indicated. In that case, the defendant, Feinman, had an offense level of 30 and a criminal history category of V. *Id.* at 501. The district court found, however, that Feinman's long and lucrative association with the drug trade, as evidenced by his criminal history, indicated that Feinman was likely to repeat his crimes. *Id.* at 502. Consequently, the district court concluded that a criminal history category of V under-represented Feinman's criminal record and the court increased the category to VI. *Ibid.*

On appeal, we found that the economic benefit to Feinman, coupled with his long-term association with the drug culture, suggested that Feinman was likely to return to a life of crime after he was released from prison. We also agreed with the judge that the fact that Feinman's prior convictions were all related to drugs was "more serious than a random accumulation of points. . . ." We concluded that Feinman's case implicated "unusual circumstances" under the first part of the *Joan* test. *Ibid.*

■ As in *Feinman,* we find that Fletcher's case also implicates unusual circumstances. Fletcher argued that his case was ripe for a downward departure because of his extraordinary family responsibilities, the age

of the convictions on his record, the time intervening between the convictions, and his attempts to deal with his drug and alcohol problems. Moreover, Fletcher specifically requested the court to compare him "to other defendants who would typically be career offender material." Fletcher also argued that the court should consider his "likelihood of recidivism" in light of his success in rehabilitating himself.

We find that these circumstances present a satisfactory basis for a downward departure. Fletcher's unrelated past convictions, *cf. Feinman*, 930 F.2d at 502, the type of convictions, his attempts to deal with his alcohol problems, *see United States v. Maddalena*, 893 F.2d 815, 818 (6th Cir.1989), the age of the convictions, and Fletcher's responsibilities to his parents are circumstances that indicate that the seriousness of Fletcher's record and his likelihood of recidivism were over-stated by an offense level of 32 and a criminal history category of VI.

The United States argues that Fletcher's case is not unusual and that the district court erred by considering the age of the Fletcher's convictions. The United States argues that since the age of a conviction is a factor that the Sentencing Commission has already considered, *see* 18 U.S.C. § 3553(b), U.S.S.G. § 4A1.2(e)(1), the district court was prohibited from relying on this as a reason for a downward departure.

The United States relies on *United States v. LaSalle*, 948 F.2d 215 (6th Cir.1991) to support its position. In *LaSalle*, we held that a district court may not depart downward solely because it believes that the career offender sentence is excessive. In that case, the defendant was convicted of possession of cocaine and using a gun in relationship to a drug trafficking crime. For purposes of sentencing, the district court found that the defendant met the definition of "career offender" because he had two prior convictions, one for attempted breaking and entering, and another for assault with intent to murder. *Id.* at 216.

As a result of this enhancement, the guideline range for imprisonment was 210–262 months. The district court, however, departed downward and sentenced the defendant to 63 months. *Ibid.* In explaining the basis for the departure, the district court stated that it believed that the habitual criminal statutes violated the Double Jeopardy Clause, the application of the sentencing guidelines would result in disparate sentences among co-defendants, and that the defendant was being included in the career criminal category "because of things that happened a long time ago...." *Id.* at 216–17.

We vacated and remanded the case with instructions to impose a sentence within the 210–262 months range. We noted that the Sentencing Commission had already considered the effect of the age of prior convictions when it determined that these convictions should be included in the career offender computation, and that the district court could not justify a downward departure on this basis. *Id.* at 217–18.

The *LaSalle* case, however, is distinguishable from Fletcher's case. There is no indication in *LaSalle* that the district court related any of the factors to the defendant's likelihood of recidivism or relied on the general authorization for departure in U.S.S.G. § 4A1.3, p.s. In Fletcher's case, however, the district court had before it evidence that spoke directly to Fletcher's likelihood of recidivism and the seriousness of his record. Moreover, the district court made a specific reference to the provisions of U.S.S.G. § 4A1.3, p.s. when it departed downward. While we note that the age of Fletcher's convictions, standing alone, does not warrant a downward departure, a district court may take the age of prior convictions into account when considering a defendant's likelihood of a recidivism. On this record, the district court's consideration of the remoteness of Fletcher's 1976 conviction does not warrant a reversal.

Finally, the second and third parts of the *Joan* test are easily met. First, there is no factual dispute over Fletcher's criminal history, his attempts at rehabilitation, or his responsibility for his parents. Second, we believe that a one-category decrease in Fletcher's criminal history category and a decrease in the offense level to its original level is "reasonable."

Accordingly, we AFFIRM the district court's decision to depart downward in Fletcher's case.