39 F.3d 1183
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sagie Musa ROLAND, Defendant-Appellant.
 No. 94-1115.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1994.
 
 Before: KEITH and DAUGHTREY, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 The defendant-appellant, Sagie Musa Roland, pleaded guilty to two counts of bank fraud and was sentenced to concurrent 24-month prison terms. Roland now contends that the district court erred both in refusing to accord him a two-level reduction for acceptance of criminal responsibility and in choosing to depart upward from the applicable sentencing guideline. We find no error, and we therefore affirm the judgment of the district court.
 
 
 2
 Roland, a Nigerian national, entered this country on a tourist visa in 1987 for the stated purpose of attending college in Chicago. From 1987 until 1989, however, Roland either worked as a cab driver in Chicago or subsisted by subletting his leased taxi to others. In November 1989, the defendant was arrested in Floyd County, Georgia, and was eventually convicted of two counts of theft by taking. Roland's crimes, for which he was placed on 10 years probation, "involved a scheme in which the defendant received over $10,000 by writing checks made payable to Ernest McGowan and Barry Cosby in fictitious accounts." Roland was again arrested on March 20, 1992, this time in Porter County, Indiana, and charged with disorderly conduct, possession of marijuana, and possession of stolen property. Moreover, the attention of the police first focused on the defendant when he was seen driving another individual who had attempted to open a fictitious bank account from the depository institution.
 
 
 3
 Between June and September 1992, Roland engaged in the criminal activity that resulted in the present convictions. During that time, the defendant, or an accomplice, opened checking and savings accounts in three Michigan banks under false names. Roland then deposited forged checks into those accounts, but before the fraudulent nature of the checks could be discovered, withdrew cash from the fictitious accounts. In this manner, the defendant defrauded the three banks of a total of $50,147.41.
 
 
 4
 Approximately one month later, Roland was arrested in Chicago for forgery, using yet another false name. The defendant failed to appear for court on that charge, however, and was not returned to custody until April 1993, when he was arrested in Canada upon deplaning from a flight from Nigeria. Even upon his arrest by Canadian authorities, Roland resisted extradition to the United States and was thus able to delay his return to this country for an additional four months.
 
 
 5
 Pursuant to his plea agreement, Roland pleaded guilty to two of the charged counts of bank fraud in Michigan; the third count was then dismissed by agreement. At the sentencing hearing, the district court determined that the defendant's base offense level was 13 and that Roland did not merit a two-level reduction for acceptance of responsibility. Furthermore, although Roland's criminal history placed him within criminal history category II for sentencing purposes, the district court concluded that the applicable 15-21 month sentencing range underestimated the defendant's extensive criminal record. Believing that criminal history category III's sentencing range of 18-24 months was "more reflective" of the defendant's true record, the court imposed concurrent 24-month prison sentences upon Roland. Additionally, the defendant was sentenced to five years of supervised release at the conclusion of the prison term and was ordered to pay a $100 special assessment and $38,123.05 in restitution.
 
 I.
 
 6
 In his first issue before this court, Roland contends that the district court erred in refusing to grant him a two-level sentence reduction for acceptance of criminal responsibility, as allowed by U.S.S.G. Sec. 3E1.1(a). He insists that he promptly entered his guilty plea and that he truthfully answered the questions propounded to him by the district court at the sentencing hearing. The district court concluded, however, that such a sentence reduction was not appropriate in this case. In its ruling on this matter, the court noted:
 
 
 7
 I find in looking at this particular issue that the acceptance of responsibility as envisioned in 3E1.1 envisions an individual coming forth with facts, circumstances and contrition that would indicate to the Court that the person fully accepts responsibility both for the act and for the nature of wrongdoing in a remorseful sense. I find that lacking in this case.
 
 
 8
 A district court's refusal to reduce a defendant's sentence for acceptance of responsibility will be reversed on appeal only if that decision was clearly erroneous. United States v. Zimmer, 14 F.3d 286, 289 (6th Cir.1994). Clear error is present in a case when a reviewing court is left with the definite and firm conviction that a mistake has been made. Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985). Consequently, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574. Furthermore, as noted in U.S.S.G. Sec. 3E1.1, comment. (n. 5), "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review."
 
 
 9
 In this case, evidence was presented to the district court at sentencing from which the sentencing judge could have concluded that the defendant was not being completely truthful with the court regarding his role in the fraudulent activities. Roland insisted that a companion actually opened all the bank accounts in the fictitious names and that the defendant was entrusted only with the job of withdrawing money from those accounts. Evidence established, nevertheless, that Roland's fingerprints were found on deposit tickets filled out in order to open an account at Bank One in East Lansing, Michigan, in the name of "John W. Herter." The presentence report also noted that Herter and Roland were, in fact, the same person. Given such information, the district judge cannot be said to have committed clear error in concluding that Roland had not provided full and open disclosure of his participation in the charged offenses and was not, therefore, deserving of the two-level reduction for acceptance of responsibility. In addition, we note that Roland also manifested a lack of acceptance of responsibility for wrongdoing by fighting extradition from Canada to the United States at the time of arrest.
 
 II.
 
 10
 In a second issue, Roland submits that the district court erred in departing upward from the sentencing guidelines in order to sentence him as a defendant with a criminal history category of III. In reviewing such a challenge, this court employs the three-part analysis adopted in United States v. Joan, 883 F.2d 491 (6th Cir.1989).
 
 
 11
 First, we must determine whether the "case is sufficiently 'unusual' to warrant departure." United States v. Brewer, 899 F.2d 503, 506 (6th Cir.), cert. denied, 498 U.S. 844 (1990). Such a question involves a legal determination and is reviewed de novo. Id. Next, we must "determine whether circumstances that would warrant departure actually exist in the particular case." United States v. Fletcher, 15 F.3d 553, 556 (6th Cir.1994). Because this analysis involves factfinding by the district court, our review of that determination is conducted under the clearly erroneous standard. Id. Finally, the reviewing court "must decide if the district court's departure is reasonable." Id.
 
 A.
 
 12
 The district court noted that its decision to depart upward from the guidelines in sentencing Roland was based upon several factors that "bear upon the fact that [criminal history category] II underrepresents the [defendant's] activities and a category of III is more representative." Specifically, the court emphasized that Roland's use of a large number of aliases was indicative of the extensive nature of criminal activity in which he was involved; that Roland had previously received lenient treatment in sentencing and yet was likely to engage in continued criminal activity; and that the defendant had no meaningful employment history.
 
 
 13
 In determining whether the circumstances relied upon by the district court are sufficiently "unusual" to warrant departure from the guidelines, the reviewing court must consider whether those circumstances "are of a kind or degree that ... may appropriately be relied upon to justify departure...." Joan, 883 F.2d at 494. The guidelines themselves, in Sec. 4A1.3, list a number of examples of information that indicate "that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." Included among the inquiries that can be made by a district court are "whether the defendant was pending trial or sentencing on another charge at the time of the instant offense," Sec. 4A1.3(d); whether "prior similar adult criminal conduct not resulting in a criminal conviction" can be shown, Sec. 4A1.3(e); and whether the defendant "had previously received an extremely lenient sentence for a serious offense," Sec. 4A1.3.
 
 
 14
 The record in this matter thus indicates that the district court relied upon appropriate factors to determine that sentencing pursuant to criminal history category II would not adequately and accurately reflect the seriousness of Roland's past criminal history or the defendant's tendency toward recidivism. At least in theory, therefore, the circumstances relied upon by the district court in departing from the guidelines justified such a departure.
 
 B.
 
 15
 Moreover, in this case, facts warranting consideration of those "unusual" circumstances are present. First, the presentence report submitted to the court establishes that Roland was awaiting trial and sentencing on Indiana charges of disorderly conduct, possession of marijuana, and possession of stolen property at the time he committed the bank fraud offenses in Michigan. In fact, Roland failed to appear for proceedings in those criminal matters and an active warrant issued as a result of that absence was still outstanding at the time of the preparation of Roland's presentence report.
 
 
 16
 Furthermore, the district court was justified in considering "similar adult criminal conduct" in which the defendant engaged prior to sentencing in this matter. Such similar conduct which had not yet resulted in criminal convictions included the Chicago forgery arrest, the activities of the defendant in assisting the suspicious individual attempting to open a fictitious account at an Indiana bank, and the bank fraud in the amount of $12,024.36 against the First of America Bank in Lansing, Michigan, that comprised the dismissed third count of the indictment returned against Roland in this case.
 
 
 17
 Finally, the district court properly concluded at sentencing that Roland was extremely fortunate to be placed on probation for his role in the 1989 theft-by-taking charges in Georgia, rather than to be sentenced to spend time in prison. According to the information contained in the presentence report, over $10,000 was obtained by Roland in that earlier fraudulent scheme, a sufficiently large monetary loss that ordinarily justifies at least some period of incarceration.
 
 C.
 
 18
 Having determined that the facts of this case are "unusual" enough under guideline standards to justify departure from an otherwise applicable criminal history category, we must then measure the degree of departure under "a standard of reasonableness." In deciding whether any departure was reasonable, great deference must be given to the conclusions of the district court. As stated in United States v. Joan, 883 F.2d at 496:
 
 
 19
 [U]nless there is little or no basis for the trial court's action in departing, it must be upheld, provided the trial court has recognized that departure is the exception, and has adequately articulated its reasons for departure. Trial judges are on the front line dealing with real live defendants, and are in a far better position than appellate courts to determine the circumstances justifying an upward departure.
 
 
 20
 Had the district court in this case sentenced Roland as a level 13, category II offender, the court would undoubtedly have imposed the maximum allowable prison term of 21 months. By departing upward to criminal history category III, the district court was able to impose a harsher 24-month prison sentence on the defendant. Given Roland's extensive criminal and fraudulent activities that could not be taken into account under a routine application of the sentencing guidelines, but that were relevant to an understanding of the defendant's background, the three-month increase in the sentence imposed in this case clearly appears justifiable and reasonable. Under the three-part analysis of United States v. Joan, therefore, we conclude that the decision of the district court to depart upward from the guidelines is fully supported by evidence in the record and is not erroneous.
 
 
 21
 For the reasons set out above, we AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation