61 F.3d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Herman WASHINGTON, Roosevelt Pitts, Jr., Defendants-Appellants.
 Nos. 94-6190, 94-6192.
 United States Court of Appeals, Sixth Circuit.
 July 18, 1995.
 
 Before: MARTIN and SILER, Circuit Judges, and JOINER,[1] District Judge.
 PER CURIAM.
 
 
 1
 On December 7, 1993 two men, one armed with a .38 caliber revolver, approached Barbara Anne Jones at approximately 12:20 p.m. while she was in her 1990 Geo Prism outside her condominium complex in Nashville, Tennessee. The man later identified as Herman Washington cocked and pointed the gun at Jones. After Washington initially told Jones that he wanted her to drive them wherever they directed, the men allowed Jones to exit the car. The men took her car but soon after were apprehended by the police. A federal grand jury indicted Herman Washington and Roosevelt Pitts, Jr. in relation to this incident. On June 21, 1994, Roosevelt Pitts, Jr. pled guilty to one count of conspiracy to commit carjacking in violation of 18 U.S.C. Sec. 371, and to one count of carjacking in violation of 18 U.S.C. Sec. 2119.[2] Pitts now raises two arguments challenging his sentence. Herman Washington was convicted by a jury of conspiracy to commit carjacking, carjacking, of using or possessing a weapon in relation to a crime of violence in violation of 18 U.S.C. Sec. 924(c), and of being a felon in possession in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a). Washington raises three issues to challenge his conviction.
 
 I. Roosevelt Pitts
 
 2
 After determining that Pitts had two prior violent felony convictions, one of which involved the sale of .83 grams of cocaine to an undercover officer, the district court enhanced Pitts's Base Offense Level of 24 to 29 under United States Sentencing Guidelines Sec. 4B1.1 because Pitts qualified as a "career offender" under the Guidelines. After a reduction for acceptance of responsibility, Pitts's offense level was 26 and thus the guideline range for a term of imprisonment was 120 to 150 months. Pitts was sentenced to ten years (120 months) imprisonment and two years supervised release.
 
 
 3
 We review a district court's sentencing determinations only in limited circumstances, 18 U.S.C. Sec. 3742(a), such as where the court misapplies the Guidelines. Pitts now renews his argument that the district court misapplied the Guidelines by enhancing his sentence under USSG Sec. 4B1.1, the career offender provision. Pitts argues that to apply Section 4B1.1 to him "unfairly and disproportionately overstates the seriousness of his criminal history." Pitts believes that one of his prior convictions, that for selling .83 grams of cocaine, was de minimis. The district court, however, found that Pitts used a 16-year old to hold the cocaine during this offense and that Pitts sold cocaine as a means of supporting himself. Thus, even if we were to decide contrary to precedent[3] that the district court should have considered the amount of cocaine involved, the court did not err in determining that Pitts qualified as a career offender for sentencing under Section 4B1.1. Further, these facts simply do not warrant departure under the policy statement in USSG Sec. 4A1.1. See United States v. Fletcher, 15 F.3d 553 (6th Cir.1990) (citing United States v. Joan, 883 F.2d 491 (6th Cir.1989) (stating that one factor for departure is that a case must be sufficiently unusual to warrant departure)).
 
 
 4
 Pitts also argues that the court erred by failing to consider whether his drug addiction and his strong family ties warranted departure. While a history of success in rehabilitating oneself from a substance addiction may be one ground warranting departure, Fletcher, 15 F.3d 553, the Guidelines state that "[d]rug or alcohol abuse is not a reason for imposing a sentence below the guidelines." USSG Sec. 5H1.4 p.s. Further, stating that one has "strong family ties" without stating more extraordinary circumstances warranting departure is not sufficient to justify a departure. USSG Sec. 5H1.6 p.s. Here, Pitts states that he is close to and provides for his children. However, the children live with their mother and have other means of support. While it is understandable that Pitts would desire to be with his children and continue to provide for them, his situation is all too common and not the extraordinary circumstance that would warrant departure.
 
 II. Herman Washington
 
 5
 Washington argues that the district court erred in failing grant his motion to suppress Jones's identification of him where the police displayed Washington from the rear seat of a police car in handcuffs. Washington argues that this method of identification was unduly suggestive and conducive to mistaken identification. Washington also argues that there was insufficient evidence to convict him because the tainted "show-up," the fact that the police lost sight of him for a time while giving chase, and the fact that he was apprehended after a civilian pointed out to the police a "person who looked like he was being chased" do not establish beyond a reasonable doubt that he committed this crime.
 
 
 6
 While we agree that the "show-up" was suggestive, it did not violate Washington's due process rights. Under Manson v. Braithwaite, 432 U.S. 98 (1977) and Neil v. Biggers, 409 U.S. 188, 199 (1972), an identification is admissible if, under the totality of the circumstances, it is judged to be reliable even though it is suggestive. Here, Jones had a good opportunity to view Washington. This crime occurred in the middle of the day. Washington opened the door of her car and was about a foot away from her during this crime. Jones testified that she looked at his face at this time. Washington then told Jones to get out of the car, to leave her purse, and to drive them somewhere. Jones's attention was good--she was about to check her mail, she noted that Washington cocked the gun, and gave a general but accurate description of his physique and what he was wearing. Only thirty minutes passed between the crime and the show-up, and thus her memory of the assailants would have been fresh. When Jones identified Washington, she told the police that he was the one with the gun. Given the totality of circumstances leading to this identification, the identification is reliable and the district court did not err in denying Washington's motion to suppress.
 
 
 7
 Given the admissibility of the identification, we disagree with Washington's assertion that there was insufficient evidence, after viewing the evidence in the light most favorable to the government, to prove every element of the crimes charged beyond a reasonable doubt. United States v. Ferguson, 23 F.3d 135, 140 (6th Cir.) (stating standard of review for insufficient evidence claims), cert. denied, 115 S.Ct. 259 (1994). Without restating the record here, there is ample evidence to prove every element of the crimes charged beyond a reasonable doubt. Geo Prisms are not made in the state of Tennessee and Jones used it for interstate travel. The testimony of Jones, of Frank Langford, the manager of the condominium complex who saw the appellants approach Jones's car and the look of horror on her face, the testimony of the police officers who pursued the Geo Prism and apprehended Pitts as he exited the car, and of Paul Woods, who followed Washington as he attempted to elude police, assisted in apprehending Washington and who saw Washington put an object, a .38 revolver, under a bus in a church parking lot, was sufficient to convict Washington. Thus, the district court did not err in denying Washington's motion for acquittal.
 
 
 8
 Finally, Washington contends that the felon in possession charge should have been severed from the other counts for trial because its inclusion resulted in prejudice to him in his defense. As Washington notes in his brief, this Court has held that a defendant is not prejudiced by a denial of severance where the court gives the jury a limiting instruction that it may not consider the defendant's prior convictions to prove the elements of the crimes charged, except for the purpose of establishing the prior felonies for the felon in possession count. United States v. Ford, 872 F.2d 1231 (6th Cir.1989), cert. denied, 495 U.S. 918 (1990). In this case, the district court gave such an instruction and under Ford we do not believe that the defendant was prejudiced by the denial of severance.
 
 
 9
 For the foregoing reasons, we AFFIRM the judgments of the district court in this case.
 
 
 
 [1]
 The Honorable Charles W. Joiner, Judge of the United States District Court for the Eastern District of Michigan, sitting by designation
 
 
 [2]
 We should note that the carjacking statute is constitutional and was validly enacted by Congress pursuant to its Commerce Clause power. United States v. Johnson, 22 F.3d 106 (6th Cir.1994). Furthermore, United States v. Lopez, 115 S.Ct. 1624 (1995) does not cause us to alter our conclusion in Johnson. First, Congress has stated the jurisdictional nexus in the first paragraph of 18 U.S.C. Sec. 2119 ("Whoever ... takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce....). Second, Congress has also made findings that auto theft has a significant impact on the automobile manufacturing and sales industries, on the insurance industry, and ultimately on the consumer whose pocketbook is directly and significantly affected by the cost of auto theft. H.R.Rep. No. 102-851(I), 102d Cong., 2d Sess. 13-17, reprinted in 1992 U.S.C.C.A.N. 2831-33. Indeed, Congress found that the 1.6 million automobiles stolen in 1991 represented fifty percent of the value of all property lost to crime that year. 1992 U.S.C.C.A.N. at 2830. Further, Congress heard testimony from the insurance industry that sixty-four percent of an automobile owner's comprehensive insurance premium is attributable to theft claims. Id. at 2831. Congress determined that by federalizing carjacking, it "would enable a greater contribution by federal law enforcement agencies" to fight this, and other, automobile crimes. Id. at 2832
 In the instant case, the Geo Prism stolen had travelled in interstate commerce because Prisms are not made in Tennessee. Further, the theft of this auto hindered Ms. Jones from using it to travel interstate, as she had done in the past. Had her assailants succeeded, the theft of her Prism would certainly have contributed to keeping insurance premiums to pay for car theft high. We believe that carjacking "substantially affects" interstate commerce and therefore Congress had the power to enact this legislation. See 115 S.Ct. at 1630 (stating that regulated activity must "substantially affect" interstate commerce in order to be within Congress' power to regulate under the Commerce Clause).
 
 
 [3]
 United States v. Hays, 899 F.2d 515, 519-20 (6th Cir.), cert. denied, 498 U.S. 958 (1990) (holding that drug quantity is not considered by the court when sentencing career drug offenders)