*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 10a0171p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

    *v.*

DARYL MARCUS PEMBROOK,
                *Defendant-Appellant.*

No. 08-6452

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20194-001—Jon Phipps McCalla, Chief District Judge.

Argued: April 21, 2010

Decided and Filed: June 11, 2010

Before: BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Randolph W. Alden, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennesee, for Appellant. Daniel T. French, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

     BOGGS, J., delivered the opinion of the court, in which SUHRHEINRICH, J., joined. ROGERS, J. (pp. 10-16), delivered a separate dissenting opinion.

_____

## OPINION

_____

     BOGGS, Circuit Judge. In 1997, Daryl Marcus Pembrook pleaded guilty to possession with intent to distribute crack cocaine. Under U.S.S.G. § 4B1.1, Pembrook was a career offender. At sentencing, Pembrook prevailed upon the district court to depart downward from his career-offender guideline range to a sentence stated with reference to the analogous range for his crack-cocaine offenses. A decade later, Pembrook filed a motion to

reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), arguing that Amendment 706 to the crack-cocaine guidelines had lowered his applicable guideline range.  The district court denied his motion, on the grounds that Pembrook's applicable guideline range was his career-offender range–not his crack-cocaine range–and Amendment 706 did not affect that range. Pembrook now appeals.  Because we conclude that Pembrook's applicable guideline range was his career-offender range, and Amendment 706 did not have the effect of lowering that range, we affirm.

## I

On December 19, 1997, Pembrook appeared before the United States District Court for the Western District of Tennessee and pleaded guilty to possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1). The Presentence Investigation Report (PSR) determined that Pembrook qualified as a career offender because he was twenty-six years old, his instant conviction was a controlled-substance felony, and he had two prior controlled-substance felony convictions.  Consequently, Pembrook had a total offense level of thirty-four and a criminal history category of VI, resulting in a guideline range of 262-367 months.

At Pembrook's sentencing hearing, neither party objected to the PSR, and the district court determined that Pembrook's guideline range was 262-367 months.  Pembrook moved for a downward departure pursuant to U.S.S.G. §§ 4A1.3 and 5K2.0, arguing that his "criminal history category significantly over represent[ed] the seriousness of his past conduct," and that his case "present[ed] circumstances and factors that really put his cases outside of the heartland of cases covered by the Guidelines."

The district court proved sympathetic to Pembrook's arguments and decided to grant Pembrook a downward departure.  The court observed that "if the defendant were not qualified as a Career Criminal, which he is, he would be looking at 188 to 235 months of incarceration."  After hearing from the Government, the district court decided to impose a 200-month sentence.  The court explicitly stated that this sentence was within the guideline range that would have applied to Pembrook had he not qualified as a career offender.

Nearly ten years after Pembrook was sentenced, the United States Sentencing Commission adopted Amendment 706 to the Sentencing Guidelines, which retroactively reduced the base offense level for most crack-cocaine offenses.  Shortly thereafter, on June 6, 2008, Pembrook filed a motion with the district court, seeking a reduction in his sentence pursuant to 18 U.S.C. § 3582(c)(2).  Pembrook contended that he was eligible for such a reduction because the district court had originally imposed a sentence "based on" his crack-cocaine guideline range, and Amendment 706 lowered that range.  The district court, however, concluded that Pembrook was not eligible for a sentence reduction because Pembrook's applicable guideline range was his career-offender range, not his crack-cocaine range, and Amendment 706 did not affect that range.  The district court therefore denied Pembrook's motion.  Pembrook timely appealed.

**II**

On appeal, Pembrook claims that the district court erred when it concluded that he was ineligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).  We review a district court's denial of a motion to modify a sentence under § 3582(c)(2) for an abuse of discretion.  *United States v. Perdue*, 572 F.3d 288, 290 (6th Cir. 2009).  A district court abuses its discretion when it relies on clearly erroneous findings of fact, applies the law improperly, or uses an erroneous legal standard.  *Ibid*.

A district court may modify a defendant's sentence only as authorized by statute. *Ibid.*  Section 3582(c)(2) authorizes a district court to reduce a defendant's sentence when (1) the defendant "has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," and (2) "such a reduction is *consistent with applicable policy statements* issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2) (emphasis added).  The applicable policy statement, U.S.S.G. § 1B1.10, provides that "[a] reduction in the defendant's term of imprisonment is not consistent with this policy statement [if] . . . [a]n amendment [to the Guidelines] does not have the effect of lowering the defendant's *applicable guideline range*."  U.S.S.G. § 1B1.10(a)(2)(B) (emphasis added).  Accordingly, a defendant is ineligible for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) unless an amendment to the Sentencing Guidelines lowers the defendant's "applicable guideline range."  *See*

*United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009) ("When Congress granted the district courts authority to reduce otherwise valid sentences pursuant to § 3582(c)(2), it explicitly restricted judicial discretion by incorporating the Commission's policy statements . . . .").

In this case, Pembrook contends that his "applicable guideline range" is the guideline range that the sentencing court referenced after it chose to depart downward pursuant to U.S.S.G. §§ 4A1.3 and 5K2.0–that is, his crack-cocaine guideline range. Pembrook therefore concludes that he is eligible for a sentence reduction based on Amendment 706 to the Sentencing Guidelines.

Our circuit has not yet addressed the meaning of "applicable guideline range" in this context.[1] Pembrook's position finds support in recent decisions by the Second and Fourth Circuits, which have held that when a sentencing court uses its authority under U.S.S.G. § 4A1.3 to depart downward from the career-offender guideline range to the crack-cocaine guideline range, the defendant's applicable guideline range is his crack-cocaine range. *United States v. Munn*, 595 F.3d 183, 192-93 (4th Cir. 2010); *United States v. McGee*, 553 F.3d 225, 229-30 (2d Cir. 2009). These courts have concluded that such a defendant is eligible for a sentence reduction based on Amendment 706. *Munn*, 595 F.3d at 192; *McGee*, 553 F.3d at 230. In contrast, the Eighth and Tenth Circuits have held that a defendant's applicable guideline range is "the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category but prior to any discretionary departures." *United States v. Darton*, 595 F.3d 1191, 1197 (10th Cir. 2010); *see also United States v. Blackmon*, 584 F.3d 1115, 1116-17 (8th Cir. 2009); *United States v. Tolliver*, 570 F.3d 1062, 1066 (8th Cir. 2009). The Eighth and Tenth Circuits have therefore concluded that § 3582(c)(2) does not authorize a sentence reduction for a defendant who received a

---

[1] We have previously held "that a district court may not grant a motion for a reduction in sentence premised upon Amendment 706 if the defendant seeking the reduction was originally sentenced as a career offender," *Perdue*, 572 F.3d at 292, even if the defendant received a multi-level downward departure pursuant to U.S.S.G. § 5K1.1, *see id.* at 290; *see also United States v. Lockett*, 341 F. App'x 129, 131 (6th Cir. 2009). However, the court reached that conclusion without specifically addressing the meaning of "applicable guideline range."

downward departure from the career-offender range to the crack-cocaine range. *Darton*, 595 F.3d at 1197; *Blackmon*, 584 F.3d at 1116-17; *Tolliver*, 570 F.3d at 1066-67.

After a review of U.S.S.G. § 1B1.10 and related guidelines, we agree with the Eighth and Tenth Circuits, and hold that the term "applicable guideline range" in U.S.S.G. § 1B1.10 refers to a defendant's pre-departure guideline range. The language of U.S.S.G. § 1B1.10 itself (the policy statement applicable to retroactive sentence reductions after amendments) offers some support for this position. U.S.S.G. § 1B1.10(b)(2) states that a district court may not reduce a defendant's sentence to a term below an amended guideline range unless "the original term of imprisonment imposed was less than the term of imprisonment provided by the *guideline range applicable to* the defendant at the time of sentencing, [in which case] a reduction comparably less than the amended guideline range . . . may be appropriate." U.S.S.G. § 1B1.10(b)(2)(B) (emphasis added). This provision specifically refers to the defendant's applicable guideline range as the guideline range that applied before the sentencing court decided to depart or vary downward. It thus weighs in favor of interpreting the defendant's applicable guideline range as his pre-departure guideline range.[2]

The most persuasive support for this reading of "applicable guideline range," however, emerges from U.S.S.G. § 1B1.1, which sets forth the "Application Instructions" for the Sentencing Guidelines and establishes the specific order in which courts are to apply guideline provisions. *See* U.S.S.G. § 1B1.1; *Tolliver*, 570 F.3d at 1065-66. The first six steps in the instructions involve calculating the defendant's total offense level and criminal history category. U.S.S.G. §§ 1B1.1(a)-(f). The next two steps in the instructions direct the sentencing court to "[d]etermine the guideline range . . . that corresponds to the [defendant's] offense level and criminal history category" and then to "determine . . . the sentencing requirements" for that "particular guideline range."

---

[2]The *McGee* court addressed this argument and conceded that it was "not without force," 553 F.3d at 228, but ultimately concluded that the language of U.S.S.G. § 1B1.10(b)(2)(B) *alone* was insufficient to establish that "applicable guideline range" referred to the defendant's pre-departure range, *see id.* at 228-29.

*Id.* §§ 1B1.1(g)-(h). Only *after* the court has determined the defendant's guideline range and corresponding sentencing requirements is the court instructed to "[r]efer to Parts H and K of Chapter Five, Specific Offender Characteristics and *Departures*, and to any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence." *Id.* § 1B1.1(i) (emphasis added). This plainly indicates that a defendant's guideline range is "the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category but prior to any discretionary departures." *Darton*, 595 F.3d at 1197; *see also Tolliver*, 570 F.3d at 1065-66.

Consistent with this reasoning, the application notes to U.S.S.G. § 1B1.1 define the term "departure" to mean

> imposition of a sentence *outside the applicable guideline range* or of a sentence that is otherwise different from the guideline sentence; and . . . for purposes of 4A1.3 (Departures Based on Inadequacy of Criminal History Category), assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence *outside the applicable guideline range*.

U.S.S.G. § 1B1.1 comment. (n.1(E)) (emphasis added). Under this definition, "a departure only exists *apart from* the applicable guideline range; there is no such thing as a departure *to* the applicable guideline range." *Darton*, 595 F.3d at 1194 (citing *Tolliver*, 570 F.3d at 1066). This leads inescapably to the conclusion that a defendant's applicable guideline range under U.S.S.G. § 1B1.10 is his pre-departure guideline range. Note 1(E) specifically says that a departure is "outside the applicable guideline range," and it would thus be nonsensical to have an "applicable guideline range" that is the *result* of a departure.[3] *Cf. United States v. Erpenbeck*, 532 F.3d 423, 441 (6th Cir. 2008)

---

[3] Invoking the rule of lenity, the dissent suggests that the term "applicable guideline range" is ambiguous and should therefore be interpreted in favor of the defendant. *See infra* pp. 15-16. However, as *Thomas v. Barber* recently reaffirmed, the rule of lenity does not automatically apply whenever a statute exhibits any ambiguity–especially not if the language of the statute, though not entirely unambiguous, admits to a natural reading. *See* 560 U.S. –, 2010 WL 2243706, at \*9, \*11 (2010). Rather, "the rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Id.* at \*9 (internal quotation marks and citations omitted). That is not the case here.

(indicating that courts should interpret the Sentencing Guidelines as a coherent whole and give consistent meaning to terms throughout the Guidelines).

We recognize, however, that the Fourth Circuit rejected this reasoning–at least as it applies to a departure under U.S.S.G. § 4A1.3–in *United States v. Munn*, 595 F.3d at 192-95.   In *Munn*, the court focused on U.S.S.G. § 1B1.1(f), which instructs a sentencing court to "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four" prior to calculating the defendant's guideline range.  Based on this instruction, the *Munn* court reasoned that a sentencing court must grant the § 4A1.3 departure–which appears in Part A of Chapter Four–before determining the defendant's applicable guideline range.**[4]**  *Munn*, 595 F.3d at 192.  The *Munn* court therefore concluded that, "under the Application Instructions, [a § 4A1.3 departure] is a departure *to*, as opposed to a departure *from*, the applicable guideline range."  *Id.* at 193.  Turning to the definition of "departure" that appears in the application notes to § 1B1.1, the *Munn* court observed that the Sentencing Commission only added that definition in 2003, and that a court "must apply the Guidelines edition in effect when [the defendant] was sentenced."  *Id.* at 193 (citing U.S.S.G. § 1B1.11(a)).  Because the defendant in *Munn* was sentenced in 2001, the court determined that it was inappropriate "to rely, to [the defendant's] detriment, on the after-the-fact definition of 'departure.'" *Ibid.*

The *Munn* court's analysis is not persuasive.  As Judge Duncan observed in her well-reasoned dissent from *Munn*, U.S.S.G. § 4A1.3 "itself belies the [*Munn* court's] conclusion[s]." 595 F.3d at 196 (Duncan, J., dissenting).  In its present form, § 4A1.3 authorizes a "downward departure" if the defendant's criminal history category overstates the seriousness of the defendant's past crimes.  U.S.S.G. § 4A1.3(b)(1).  According to the commentary to § 4A1.3, the term "downward departure" in § 4A1.3 has the same meaning that it has in the commentary to § 1B1.1—it is a "departure that effects a sentence less than a sentence that could be imposed under the *applicable*

_____

**4**Notably, this reasoning would not apply to a § 5K2.0 departure, which appears in Chapter 5 of the Guidelines.

*guideline range* or a sentence that is otherwise less than the guideline sentence." U.S.S.G. § 1B1.1 comment. (n.1(E)) (emphasis added); *see also* U.S.S.G. § 4A1.3 comment. (n.1) (incorporating the definition of "downward departure" from U.S.S.G. § 1B1.1 comment. (n.1)).[5] This definition indicates that a § 4A1.3 departure is a departure *from* the applicable guideline range, not a departure *to* the applicable guideline range. Likewise, earlier versions of § 4A1.3 authorized a sentencing court to impose "a sentence *departing from the otherwise applicable guideline range*." U.S.S.G. § 4A1.3 (1997) (emphasis added).[6] This language clearly assumed that § 4A1.3 would "be applied while determining what sentence to impose *after* having calculated the applicable guideline range, and not while determining the criminal history category before having calculated the applicable guideline range. The contrary interpretation, illogically, [would] give[] the sentencing court no applicable guideline range from which to depart." *Munn*, 595 F.3d at 196 (Duncan, J., dissenting).

Further, U.S.S.G. § 1B1.1(f) does not actually support the *Munn* court's position. As Judge Duncan noted:

> Subsection (f) of [U.S.S.G. § 1B1.1] does not state, "Apply Part A of Chapter 4," but rather, "Determine the defendant's criminal history category as specified in Part A of Chapter Four." USSG § 1B1.1(f). Given the language quoted above, USSG § 4A1.3 does not involve calculating [the defendant's] criminal history category but instead involves imposing a particular sentence. Thus, subsection (f) does not in fact require applying USSG § 4A1.3 before [calculating the defendant's guideline range]. Instead, the relevant instruction does not come until [the last step in the Application Instructions], which provides: "Refer to . . . any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence."

---

[5] U.S.S.G. § 5K2.0 also incorporates this definition of "downward departure." *See* U.S.S.G. § 5K2.0 comment. (n.1).

[6] U.S.S.G. § 5K2.0 similarly authorized a "departure *from the applicable guideline range*." U.S.S.G. § 5K2.0 (1997) (emphasis added). In fact, § 5K2.0 still provides that "[t]he sentencing court may depart *from the applicable guideline range*." U.S.S.G. § 5K2.0 (2009) (emphasis added).

595 F.3d at 196-97 (Duncan, J., dissenting).  We therefore reject the *Munn* court's reasoning.[7]

In sum, then, a defendant's applicable guideline range for the purposes of U.S.S.G. § 1B1.10  is the range that applies before the sentencing court grants any discretionary departures.[8]  As a result, in this case, Pembrook's applicable guideline range was his career-offender range, *not* the crack-cocaine range to which the district court departed under U.S.S.G. §§ 4A1.3 and 5K2.0.  It follows that Amendment 706 to the Sentencing Guidelines did not have the effect of lowering Pembrook's applicable guideline range, and Pembrook is not eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2).  The district court therefore did not abuse its discretion when it denied Pembrook's motion for a reduction of sentence.

### III

For the reasons stated above, we AFFIRM the order of the district court.

---

[7]We also note that the *Munn* court's approach does not appear to reflect actual practice.  As this case illustrates, a district court will generally grant a § 4A1.3 (or § 5K2.0) departure only after calculating the defendant's guideline range (and the PSR will almost always present the defendant's guideline range without any departures).

[8]This reading of the term "applicable guideline range" appears consistent with the purpose of 18 U.S.C. § 3582(c)(2).  By its terms, § 3582(c)(2) seeks to allow a sentence reduction only when the Sentencing Commission has determined that a defendant's original sentencing range was excessive.  *See* 18 U.S.C. § 3582(c)(2) (authorizing a sentence reduction only when the Sentencing Commission has both lowered a defendant's sentencing range and refrained from issuing a policy statement that is inconsistent with such reduction).  In this case, the Sentencing Commission has never determined that the defendant's original sentencing range was excessive–at all relevant times, Pembrook has qualified as a career offender under the Guidelines, and his career-offender range has remained constant.  It was only the sentencing court that determined that Pembrook's career offender range was excessive, acting under its departure authority, rather than by recalculating or altering the "applicable guideline range."

———————————

**DISSENT**

———————————

ROGERS, Circuit Judge, dissenting.   The Sentencing Guidelines should be interpreted, if the words can fairly be so read, to permit resentencing when a properly applied Guideline that affected the length of a sentence is later retroactively reduced. When two Guideline calculations were properly used at two different steps of the sentencing determination process to determine a defendant's original sentence, no policy supports permitting resentencing only if the first, but not if the second, calculation would have been different under a retroactive amendment.   It is hard to imagine why the Sentencing Commission would adopt such a policy.  The syntax of the operative policy statement language does not require such a limit; indeed, it cuts the other way.   Under the policy statement, there must have been a lowering of "the defendant's applicable guideline range."   U.S.S.G. § 1B1.10(a)(2)(B).   The words most naturally mean "a guideline range [properly] applied to the defendant."  The words do not require that there be only one such range.  By analogy, if a sport rule provides for a penalty if "the player's foot steps out of bounds," English syntax does not require that the rule apply only to the right foot or the left foot.   The clear meaning of "the player's foot" is "a foot of the player."   In short, because the Sentencing Commission retroactively lowered the Guideline range that the district court properly applied to Pembrook so as to affect his sentence, the requirements of the statute and the operative policy statement were fulfilled, and the district court had the authority to resentence Pembrook.

Daryl Pembrook pled guilty to possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1).  His base offense level under U.S.S.G. § 2D1.1 (1997) was 34, reflecting the fact that his offense involved between 150 and 500 grams of crack cocaine.  At Pembrook's initial sentencing, the district court determined that Pembrook qualified as a career offender, increasing his offense level to 37.  After a three-point reduction for acceptance of responsibility, Pembrook's offense level was 34. The district court explicitly noted that, absent the career offender determination,

Pembrook would have had an offense level of 31.  Regardless of whether he was a career offender, Pembrook's criminal history category was VI.  The district court determined that Pembrook's career offender offense level and his criminal history category "call[ed] for a sentence of 262 to 327 months imprisonment."  (This calculation was not affected by the later retroactive amendment to the Guidelines.)  Pembrook's attorney argued that Pembrook's criminal history over-represented the seriousness of his past conduct and requested that the district court follow *United States v. Fletcher*, 15 F.3d 553, 557 (6th Cir. 1994), and approve a "downward departure from the Career Offender Status."

The district court granted the departure, and noted, "[f]or the record," that "if the defendant were not qualified as a Career Criminal, which he is, he would be looking at 188 to 235 months imprisonment."  That 188 to 235 month range corresponded with Pembrook's § 2D1.1 offense level as adjusted for Pembrook's acceptance of responsibility.  Pembrook's counsel requested a sentence at the low end of this range, but the court stated that, given Pembrook's history, there was "no basis for the low end of the Guidelines."  After hearing from the defendant, the court determined that Pembrook also did not deserve to be sentenced at a level as high as "the middle of the Guidelines," which was the district court's normal practice.  The court thus sentenced Pembrook to 200 months' imprisonment, near the 25th percentile of Pembrook's § 2D1.1 crack cocaine Guideline range.  Amendment 706 amended U.S.S.G. § 2D1.1 retroactively, such that Pembrook's § 2D1.1 range would have been 151 to 188 months' imprisonment if Amendment 706 had predated Pembrook's sentencing.  A sentence at approximately the same percentile within the amended, 151 to 188 month, range would be 160 months' imprisonment.

Following Amendment 706 and Pembrook's motion for resentencing, the district court possessed the authority to resentence Pembrook.  Under 18 U.S.C. § 3582(c)(2), a district court may modify a defendant's sentence if two conditions are satisfied.  First, the defendant must have been "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)."  This condition has been satisfied in the present case

because the district court based Pembrook's sentence on the crack cocaine Guideline range applicable to Pembrook absent Pembrook's career offender status.  Second, the sentence reduction must be "consistent with applicable policy statements issued by the Sentencing Commission," here U.S.S.G. § 1B1.10.  That policy statement requires that an amendment listed in U.S.S.G. § 1B1.10(c) "have the effect of lowering the defendant's applicable guideline range."  U.S.S.G. § 1B1.10(a)(2)(B).  This condition has also been satisfied because Amendment 706—which is listed in § 1B1.10(c)—lowered the Guideline range that the district court actually applied to Pembrook after the court determined that the career offender range was not appropriate in Pembrook's case.

The phrase "applicable guideline range" as used in U.S.S.G. § 1B1.10 is most logically read to include any Guideline range properly applied to a defendant so as to affect his sentence.  In this case, after the district court departed from the career offender Guideline range, the court clearly applied the § 2D1.1 crack cocaine Guideline range to Pembrook, expressly deciding that Pembrook deserved a sentence above the bottom of that range but below the range's median.  As the majority reasons, the words "applicable guideline range" sensibly refer to the U.S.S.G. § 1B1.1(g) step of the Guidelines Application Instructions.  But this does not mean that the phrase does not also include a Guideline range applied at the later U.S.S.G. §1B1.1(i) step, dealing with departures.  There is no reason to limit the phrase "applicable guideline range" to step (g), when a Guideline range is actually and legitimately "applied" as well at step (i).

Moreover, the Guidelines provide no global definition of the phrase "applicable guideline range," and a number of Guidelines provisions suggest that this phrase is not intended to have such a specific or limited meaning.  The clearest provision indicating that the phrase "applicable guideline range" has multiple uses—including referring to Guideline ranges applied after a departure—is U.S.S.G. § 4A1.3(b)(2)(A).  Section 4A1.3 is entitled "Departures Based on Inadequacy of Criminal History Category," and subsection (b)(1) provides that if a "defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history . . . a downward

departure may be warranted." As an example, a defendant might have an offense level of 25 and a criminal history category of III, resulting in a pre-departure Guideline range of 70 to 87 months. If that defendant's criminal history category substantially over-represented the seriousness of the defendant's prior criminal history, however, the district court would be entitled to depart downward from that range to account for that over-representation. Subsection (a)(4)(A) encourages courts to "determine the extent of a departure under this subsection by using, as a reference, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." The district court thus might determine that criminal history category I more accurately reflects the seriousness of the defendant's criminal history. But subsection (b)(2)(A) limits the authority of district courts to depart: "A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited." Thus, for the hypothetical defendant, a departure below the bottom of the range for offense level 25 and criminal history category I—57 months—would be prohibited by subsection (b)(2)(A). In the context of this example, the Guidelines refer to the post-departure range as an "applicable guideline range," apparently because the district court in the situation in which that provision is binding would have determined that the post-departure range applies to the defendant. This court has also previously characterized a departure pursuant to U.S.S.G. § 4A1.3 as being "granted in the context of calculating the applicable Guidelines range." *United States v. Asher*, 239 F. App'x 180, 182 n.1 (6th Cir. 2007); *see also United States v. O'Georgia*, 569 F.3d 281, 289, 296 (6th Cir. 2009). Thus § 4A1.3 indicates that the phrase "applicable guideline range" sometimes refers to post-departure Guideline ranges.

Further, U.S.S.G. § 5G1.1 and *United States v. Johnson*, 564 F.3d 419 (6th Cir. 2009), jointly refute the notion that the phrase "applicable guideline range" refers to the range calculated at a single point in the process described by U.S.S.G. § 1B1.1. Section 1B1.1(g) instructs sentencing courts to "[d]etermine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined [by sections (a) - (f) of § 1B1.1]." Only then, in subsection (h), does a district court consult "Parts B through G of Chapter Five" to determine "the sentencing

requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution." Consideration of a defendant who is subject to a mandatory minimum sentence reveals that the Guidelines and our precedents describe both "the guideline range" mentioned by § 1B1.1(g) and "the sentencing requirements" mentioned by § 1B1.1(h) as a defendant's "applicable guideline range." As an example, in *Johnson*, the defendant had an offense level of 36 and a criminal history category of III, resulting in a Guideline range of 235 to 293 months. 564 F.3d at 420. The defendant was also subject to a mandatory minimum sentence of 240 months. *Id.* Section 5G1.1 provides that district courts may impose a sentence "at any point within the applicable guideline range, provided that the sentence . . . is not less than any statutorily required minimum sentence." Thus, for the defendant in *Johnson*, the district court could impose any sentence within the defendant's 235 to 293 month range so long as the sentence was above 240 months.[1] The Sentencing Commission in § 5G1.1, then, uses the phrase "applicable guideline range" to apply to the defendant's Guideline sentence prior to any modification for mandatory minimum sentences. But in *Johnson* we explicitly considered whether the phrase "applicable guideline range" referred to the 235 to 293 month range or to the 240 to 293 month range, and concluded under the circumstances of that case that "[w]here a mandatory minimum sentence exceeds the otherwise applicable Guidelines range—as it would were [the defendant] to be resentenced today—it replaces that Guidelines range." 564 F.3d at 423. Thus, *Johnson* used the phrase "applicable guideline range" to refer to the range computed after applying U.S.S.G. § 5G1.1. The fact that there are two uses of the phrase "applicable guideline range" under a combination of the Guidelines and our precedents refutes the theory that "applicable guideline range" may only mean, throughout the Guidelines, the range calculated in a particular step.

This court has also previously referred to a post-departure guideline range as an "applicable guideline range," further undermining the contention that this phrase is a term of art meaning only the range calculated at the § 1B1.1(g) step. *See, e.g.*, *United*

---

[1]The requirement that sentences must generally be within Guideline ranges applied, of course, only prior to *United States v. Booker*, 543 U.S. 220 (2005).

*States v. Shafer*, 573 F.3d 267, 271-72 (6th Cir. 2009) ("After . . . awarding a one-level reduction pursuant to the Government's motion for departure, the district court recalculated Shafer's offense level to be 41, with a criminal history category of I. The applicable guidelines range is 324 to 405 months . . . ."); *O'Georgia*, 569 F.3d at 289, 296 (explaining that the district court departed upwards and increased the defendant's criminal history category pursuant to U.S.S.G. § 4A1.3, which, with other adjustments, "more than doubled the applicable Guidelines range"); *United States v. Austin*, Nos. 08-5637, 08-5640, 2009 WL 89648, at *2 (6th Cir. Jan. 15, 2009) ("In the court's view, Defendant provided substantial assistance to the Government, justifying a three level offense reduction from the offense level twelve to offense level nine. As a result, Defendant's applicable Guidelines range was in Zone B . . . ."); *United States v. Harden*, 124 F. App'x 429, 429 (6th Cir. 2005) ("Due to the downward departure, the applicable guideline range was 188 to 235 months.").

Absent such a singular meaning, courts should interpret any use of "applicable guideline range" both in the context in which the phrase is used and light of the rule of lenity. "'[T]he policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended.'" *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001) (quoting *Bifulco v. United States*, 447 U.S. 381, 387 (1980)). "'This policy embodies the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.'" *Id.* (quoting *United States v. Bass*, 404 U.S. 336, 348 (1971)) (internal quotation marks omitted). The rule of lenity properly applies to interpretations of the Guidelines. *Id.* at 775. "[T]he touchstone of the rule of lenity is statutory ambiguity." *Bifulco*, 447 U.S. at 387 (internal quotation marks omitted). In the present circumstance, there is no compelling reason to read the phrase "applicable guideline range" to exclude the Guideline range that the district court actually applied to Pembrook. If the district court had departed and sentenced Pembrook to a term of imprisonment above the bottom but below the median of Pembrook's § 2D1.1 crack cocaine Guideline range after the promulgation of Amendment 706, then Pembrook would have received a sentence in the range of 151 to 170 months'

imprisonment rather than the 200 month sentence he did receive.  Pembrook's present sentence reflects the 100-1 crack cocaine to cocaine disparity rejected by Amendment 706, and thus the policy rationale underlying Amendment 706 and the Sentencing Commission's decision to apply that amendment retroactively also support resentencing Pembrook.

This conclusion accords with the decisions reached by the Fourth and Second Circuits in *United States v. Munn*, 595 F.3d 183 (4th Cir. 2010), and *United States v. McGee*, 553 F.3d 225 (2d Cir. 2009), though those courts reached their decisions using different reasoning.  Because neither *Munn* nor *McGee* relied upon the argument that the phrase "applicable guideline range" does not have a singular meaning within the Guidelines, the majority's responses to the arguments made in *Munn* and *McGee* do not contradict a straightforward reading of "the defendant's applicable guideline range" as any guideline range properly applied to the defendant.

I would therefore remand for resentencing.