PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

RAEFORD NATHANIEL MUNN,

*Defendant-Appellant.*

No. 09-7525

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(7:01-cr-00008-F-1)

Argued: December 3, 2009

Decided: February 17, 2010

Before KING, DUNCAN, and DAVIS, Circuit Judges.

---

Vacated and remanded by published opinion. Judge King wrote the majority opinion, in which Judge Davis joined. Judge Duncan wrote a dissenting opinion.

---

**OPINION**

**ARGUED**: Daniel Micah Blau, ROBERT H. HALE, JR. & ASSOCIATES, ATTORNEYS AT LAW, PC, Raleigh, North Carolina, for Appellant. Anne Margaret Hayes, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF**: Robert H. Hale, Jr., ROBERT H. HALE, JR. & ASSOCIATES, ATTORNEYS AT LAW, PC, Raleigh, North Carolina, for Appellant. George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

KING, Circuit Judge:

Raeford Nathaniel Munn pursues this appeal from the district court's denial of his motion for a reduced sentence under 18 U.S.C. § 3582(c)(2). Munn's motion was predicated on Sentencing Guidelines Amendment 706, which revised the Drug Quantity Table of section 2D1.1(c) by reducing the base offense level applicable to cocaine base ("crack") offenses. The court denied the motion on the ground that, because Munn had been designated as a career offender under Guidelines section 4B1.1, Amendment 706 did not lower his applicable guideline range and he was therefore ineligible for a sentence reduction. The sole appellate contention being pursued here is that Munn is eligible for a sentence reduction under § 3582(c)(2) because the sentencing court — having concluded that career offender status overrepresented Munn's criminal history — sentenced him according to the Drug Quantity Table, which Amendment 706 altered. As explained below, we conclude that Munn is eligible for a sentence reduction and therefore vacate and remand.

## I.

## A.

In January 2001, Munn was charged in the Eastern District of North Carolina, by way of information, with a single count of distribution of fifty grams or more of crack, in contravention of 21 U.S.C. § 841(a)(1). Munn waived his right to be indicted and pleaded guilty to the information, pursuant to a written plea agreement, on January 22, 2001.

On March 21, 2001, following Munn's guilty plea, the probation officer prepared and submitted a Presentence Investigation Report (the "PSR") to the sentencing court. On the basis of Munn's offense of conviction, the drug quantity attributable to him (155.1 grams of crack), his managerial role in the offense, and his prior criminal history, the PSR calculated his adjusted offense level at 36 and his criminal history category as IV.[1] The PSR recommended, however, that Munn be deemed a career offender under Guidelines section 4B1.1 (the "Career Offender Provision") and that his offense level and criminal history category be enhanced accordingly.[2] Because Munn's offense of conviction provided for a statu-

---

[1]Both the PSR and the sentencing court applied the 2000 edition of the Guidelines in calculating Munn's advisory guideline range. Thus, our references to the Guidelines are to the 2000 edition, unless indicated otherwise.

[2]Pursuant to the Career Offender Provision, a defendant is a career offender if

> (1) [he] was at least eighteen years old at the time [he] committed the instant offense of conviction, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) [he] has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1. According to the PSR, Munn qualified as a career offender due to his 1987 conviction for assault with a deadly weapon and his 1994 conviction for taking indecent liberties with a minor.

tory maximum sentence of life imprisonment, *see* 21 U.S.C. § 841(b)(1)(A), the PSR recommended calculating his offense level as 37 and his criminal history category as VI, *see* USSG § 4B1.1. After applying a three-level reduction for acceptance of responsibility, the PSR recommended a total offense level of 34 and a guideline range of 262 to 327 months.

Prior to Munn's sentencing hearing, each party moved for a downward departure. On June 6, 2001, the Government filed a motion requesting that the sentencing court, pursuant to Guidelines section 5K1.1, depart from the guideline range prescribed by the PSR on the basis of Munn's substantial assistance in the prosecution of others. Two days later, Munn filed his response to the PSR. Most pertinent here, Munn objected to his classification as a career offender, contending that one of his prior convictions was not a crime of violence for purposes of the Career Offender Provision. In the alternative, Munn moved for a downward departure under Guidelines section 4A1.3 (an "Overrepresentation Departure") because his career offender status significantly overrepresented his likelihood of recidivism.[3] Importantly, neither party's motion specified the extent of the departure sought.

At Munn's sentencing hearing, conducted on June 13, 2001, the court first assessed and rejected Munn's contention that he did not qualify as a career offender. The court thus adopted the PSR's recommended offense level (34) and criminal history category (VI), as prescribed by the Career Offender Provision. The court determined, however, that an Overrepresentation Departure, as sought in Munn's motion, was warranted under Guidelines section 4A1.3 because "his

---

[3]Section 4A1.3 authorizes the Overrepresentation Departure, providing that a sentencing court may "consider a downward departure from the guidelines" if the court "concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes."

criminal history category is overstated." J.A. 23.[4] The court also elected to grant the Government's request for a substantial assistance departure, pursuant to Guidelines section 5K1.1. At the conclusion of the sentencing hearing, the court explained that it would "depart down 60 months by virtue [of] the fact . . . that [Munn's] criminal history overstates the seriousness of his offense" and "depart down an additional 51 months honoring the Government's 5K1 motion . . . , which will result in a sentence of 151 months." *Id.* at 23–24. Offering no further explanation for the extent of either departure, the court then sentenced Munn to 151 months of imprisonment, with five years of supervised release. Munn did not appeal either his conviction or his sentence.

### B.

On May 1, 2007, the Sentencing Commission promulgated Amendment 706 to the Sentencing Guidelines. That Amendment, addressing crack-related drug offenses, reduced by two levels the base offense level assigned to each threshold quantity of crack listed in the Drug Quantity Table (the "Crack Guidelines"). *See* USSG § 2D1.1(c) (2007); USSG Supp. to App. C, Amend. 706 (2007).[5] Thereafter, the Commission made Amendment 706 retroactive, effective March 3, 2008. *See* USSG Supp. to App. C, Amend. 713 (2008).

Accordingly, on July 24, 2009, Munn filed a post-sentencing motion for a reduced sentence pursuant to 18 U.S.C. § 3582(c)(2).[6] In his motion, Munn explained that his

---

[4]Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[5]Prior to Amendment 706, there was a 100-to-1 disparity between crack and powder cocaine ("cocaine") offenses, resulting in sentences for crack offenses three to six times longer than for cocaine offenses involving equal amounts of drugs. *See Kimbrough v. United States*, 128 S. Ct. 558, 566 (2007). Amendment 706 sought to remedy this disparity by lowering the 100-to-1 ratio.

[6]Section 3582(c) provides that a sentencing court may not modify a term of imprisonment after its imposition, except that,

151-month sentence was predicated on an offense of conviction involving 155.1 grams of crack, which corresponded to a base offense level of 34 under the then-applicable Crack Guidelines. *See* USSG § 2D1.1(c)(3). Under Amendment 706, however, Munn's corresponding base offense level was reduced to 32. *See id.* § 2D1.1(c)(4) (2007). According to Munn, § 3582(c)(2) authorized the district court to reduce his sentence because he was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered." *See* 18 U.S.C. § 3582(c)(2). The Government opposed Munn's § 3582(c)(2) motion, however, contending that his sentence was predicated on the Career Offender Provision rather than the Crack Guidelines, thereby rendering him ineligible for a sentence reduction.

The district court agreed with the Government, concluding that Munn was ineligible for a reduced sentence under § 3582(c)(2) because Amendment 706 did not affect Munn's status as a career offender and therefore did not lower his applicable guideline range. Because Munn was deemed ineligible for a sentence reduction, the court concluded that it lacked the authority to reduce his sentence and, on August 10, 2009, denied his § 3582(c)(2) motion. Munn thereafter filed a timely notice of appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We review for abuse of discretion a district court's decision on whether to reduce a sentence under 18 U.S.C.

---

in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . , upon motion of the defendant . . . , the court may reduce the term of imprisonment, after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(2).

§ 3582(c)(2). *See United States v. Goines*, 357 F.3d 469, 478 (4th Cir. 2004). We review de novo, however, a court's conclusion on the scope of its legal authority under § 3582(c)(2). *See United States v. Dunphy*, 551 F.3d 247, 250 (4th Cir.), *cert. denied*, 129 S. Ct. 2401 (2009).

## III.

The sole issue before us on appeal is whether the district court properly concluded that it lacked authority under 18 U.S.C. § 3582(c)(2) to reduce Munn's sentence. As explained below, the court misinterpreted the limits of its authority when it denied Munn's § 3582(c)(2) motion for a reduced sentence.

## A.

We begin our analysis by examining the authority that § 3582(c)(2) grants a district court to modify a defendant's sentence. In general, a court lacks authority to modify a term of imprisonment "once it has been imposed." 18 U.S.C. § 3582(c). Section 3582(c)(2), however, creates a limited exception to the general rule, authorizing the court to modify a defendant's term of imprisonment if it was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *Id.* § 3582(c)(2). Any such reduction must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The applicable policy statement implementing § 3582(c)(2), found in Guidelines section 1B1.10 (the "Policy Statement"), provides that a reduction under § 3582(c)(2) "is not authorized" if an amendment "does not have the effect of lowering the defendant's applicable guideline range." USSG § 1B1.10(a)(2)(B) (2008). The Policy Statement then sets forth specific instructions for determining whether a particular amendment lowered the applicable guideline range. According to the Policy Statement, "the [district] court shall deter-

mine the amended guideline range that would have been applicable to the defendant if the amendment[ ] . . . had been in effect at the time the defendant was sentenced." *Id.* § 1B1.10(b)(1). Importantly, the Policy Statement instructs that the court "shall substitute only the amendment[ ] . . . for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Id.* In other words, a defendant is ineligible for a reduced sentence if "the amendment does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision." *Id.* § 1B1.10 cmt. n.1.

Together, § 3582(c)(2) and the Policy Statement make clear that a defendant whose offense of conviction involved crack is eligible for a reduced sentence only if Amendment 706 lowers the defendant's applicable guideline range. *See United States v. Lindsey*, 556 F.3d 238, 244 (4th Cir.), *cert. denied*, 130 S. Ct. 182 (2009). For example, a defendant who was convicted of a crack offense but sentenced pursuant to a mandatory statutory minimum sentence is ineligible for a reduction under § 3582(c)(2). *See United States v. Hood*, 556 F.3d 226, 235–36 (4th Cir.), *cert. denied*, 130 S. Ct. 321 (2009). Similarly, and more pertinent here, a district court lacks the authority to grant a motion for a reduced sentence under Amendment 706 if the defendant seeking the reduction was sentenced pursuant to the Career Offender Provision.[7] In each of those situations, the defendant's applicable guideline range was predicated on another statutory or Guidelines provision — the mandatory minimum sentence and the Career Offender Provision, respectively — rather than on the Crack Guidelines, such that Amendment 706 had no impact on the ultimate sentence.

---

[7]*See, e.g., United States v. Perdue*, 572 F.3d 288, 293 (6th Cir. 2009); *United States v. Martinez*, 572 F.3d 82, 85 (2d Cir. 2009) (per curiam); *United States v. Sharkey*, 543 F.3d 1236, 1239 (10th Cir. 2008).

## B.

With this legal framework in mind, we turn to the issue presented: Whether § 3582(c)(2) authorizes a district court to grant a motion for a reduced sentence when the sentencing court designated the defendant as a career offender but then found that the career offender designation overrepresents his criminal history. This is an issue of first impression in our circuit, and the other courts of appeals to face the question are split on its resolution. *Compare United States v. Tolliver*, 570 F.3d 1062, 1066 (8th Cir. 2009) (concluding that defendant is ineligible for sentence reduction in such situations), *with United States v. McGee*, 553 F.3d 225, 228 (2d Cir. 2009) (per curiam) (determining that career offender designation does not bar sentence reduction if defendant's ultimate sentence is based on Crack Guidelines), *and United States v. Moore*, 541 F.3d 1323, 1329–30 (11th Cir. 2008) (same).

### 1.

Notwithstanding the established rule that a defendant whose sentence was based entirely on the Career Offender Provision is ineligible for an Amendment 706 sentence reduction, Munn contends that the district court erred in denying his § 3582(c)(2) motion. Although Munn acknowledges that the sentencing court initially designated him a career offender and enhanced his base offense level and criminal history category accordingly, he maintains that the Career Offender Provision did not determine his ultimate sentence. According to Munn, the court instead applied the Crack Guidelines after granting an Overrepresentation Departure — pursuant to Guidelines section 4A1.3 — because the career offender classification overrepresented his criminal history. Munn insists that the *extent* of the Overrepresentation Departure can be explained only by reference to the Crack Guidelines that would have applied but for his career offender classification.

According to the 2000 edition of the Guidelines, Munn's base offense level for the distribution of 155.1 grams of crack

was 34. *See* USSG § 2D1.1(c). After a two-level enhancement for his managerial role in the offense and a three-level reduction for acceptance of responsibility, Munn's total offense level — without the career offender designation — would have been 33. That offense level, coupled with a criminal history category of IV (Munn's criminal history category before he was designated a career offender), would have resulted in a guideline range of 188 to 235 months. *See id.* Ch. 5, Pt. A (Sentencing Table). According to Munn, the sentencing court, being aware of this guideline range, chose to depart 60 months from the bottom of the career offender range (262 to 327 months) after finding that the career offender designation overrepresented the seriousness of Munn's criminal history. The resulting sentence (202 months) fit squarely within what otherwise would have been Munn's applicable guideline range (188 to 235 months). The court then granted the Government's substantial assistance departure motion, imposing a sentence of 151 months.

In other words, Munn contends that the sentencing court departed to both the lower offense level and the lower criminal history category that would have applied had the court not designated him as a career offender.[8] That offense level was prescribed by the Crack Guidelines, which were subsequently revised by Amendment 706. As a result, Munn contends that

---

[8]The 2000 edition of the Sentencing Guidelines limited neither the type nor the extent of departure available under section 4A1.3. As a result, a sentencing court, after finding that the Career Offender Provision overrepresented a defendant's criminal history, was free to depart to a lower offense level, a lower criminal history category, or both. *See United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991); *see also United States v. Greger*, 339 F.3d 666, 671 (8th Cir. 2003). At least one court has held that, due to a 2003 guideline amendment limiting the extent of an Overrepresentation Departure for career offenders to one criminal history category, a sentencing court may no longer move vertically by offense level. *See United States v. Grier*, 585 F.3d 138, 143 (3d Cir. 2009). Because Munn was sentenced prior to the 2003 amendment, however, the sentencing court was plainly authorized to move vertically to a lower offense level in granting the Overrepresentation Departure.

his sentence was based on a guideline range later amended by the Sentencing Commission, thereby rendering him eligible for a reduced sentence.

Munn's contention finds support in decisions from the Second and Eleventh Circuits. In *United States v. McGee*, the Second Circuit recently addressed the issue we must now resolve, that is, "the narrow question of whether a defendant . . . , who at sentencing was designated a career offender but granted a departure so that he was ultimately sentenced based on the crack . . . guidelines, is eligible for a reduced sentence pursuant to [Amendment 706]." 553 F.3d 225, 225–26 (2d Cir. 2009) (per curiam). There, the sentencing court had designated McGee a career offender, but ultimately based his sentence on the Crack Guidelines, finding that the career offender classification overrepresented McGee's criminal history. Years later, McGee filed a § 3582(c)(2) motion for a reduced sentence, premised on Amendment 706. The district court denied his motion, however, deeming him ineligible on the basis of his status as a career offender.

The Second Circuit disagreed with the district court, concluding that McGee was eligible for a reduced sentence under § 3582(c)(2). *See McGee*, 553 F.3d at 230. The Second Circuit reasoned that § 3582(c)(2) and the accompanying Policy Statement require only that a defendant's sentence be "based on" a subsequently amended guideline range. *Id.* at 228. With respect to McGee, the sentencing court had explicitly referenced — and selected a sentence within — the Crack Guidelines range that would have applied absent his career offender designation. *Id.* at 227. Accordingly, that the sentencing court took the intermediate step of classifying McGee as a career offender did not bar a reduction under § 3582(c)(2), for the Guidelines "do[ ] not preclude the possibility that a defendant who was, even if by virtue of a departure, sentenced 'based on' the crack guidelines would be eligible for a reduction." *Id.* at 228. As a result, § 3582(c)(2) authorized the district court to reduce McGee's sentence. *Id.*

Moreover, in *United States v. Moore*, the Eleventh Circuit observed that, when a district court grants an Overrepresentation Departure, "a reduction in sentence is within the district court's discretionary authority under § 3582(c)(2)." 541 F.3d 1323, 1330 (11th Cir. 2008). The court recognized and explained that, so long as there is some "indication that the [sentencing] court based [the defendant's] sentence on the guideline range that would have applied absent the career offender designation," or some "basis for concluding that the reduction of [the applicable] base offense level lowered the sentencing range relied upon by the [sentencing] court in determining his sentence," the defendant is eligible for a reduced sentence under § 3582(c)(2). *Id.*

2.

Notwithstanding the Second and Eleventh Circuits' resolution of this issue, the Government contends that the district court properly denied Munn's § 3582(c)(2) motion, maintaining that Munn is ineligible for a reduced sentence due to his career offender designation. According to the Government, Munn's "applicable guideline range" for purposes of § 3582(c)(2) is the *pre-departure* range (here, the guideline range prescribed by the Career Offender Provision), rather than the *post-departure* range, reached after the court granted the Overrepresentation Departure. Because Amendment 706 had no impact on the career offender guideline range, the Government maintains that Munn is ineligible for a sentence reduction.

To support its appellate contention, the Government relies primarily on its reading of the instructions in Guidelines section 1B1.1, which specify how a sentencing court is to apply the Guidelines in calculating a sentencing range (the "Application Instructions"). According to the Application Instructions, the sentencing court must begin its calculation by determining the base offense level under Guidelines Chapter 2 and then adjust that offense level for various factors speci-

fied in Chapter 3. *See* USSG § 1B1.1(a)–(e). The Application Instructions then require the court to calculate the defendant's criminal history category from Chapter Four. *See id.* § 1B1.1(f).

Next, in the penultimate step of applying the Guidelines, a sentencing court "[d]etermine[s] the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category" and "[d]etermine[s] from Parts B through G of Chapter Five the sentencing requirements and options" for that particular guideline range. USSG § 1B1.1(g)–(h). It is at the first subpart of this step when the sentencing court, according to the Government, arrives at a defendant's "applicable guideline range" for purposes of § 3582(c)(2) and the Policy Statement. The Government emphasizes that several provisions of Chapter Five refer to the defendant's "applicable guideline range." *See, e.g., id.* § 5B1.1(a)(1) (authorizing probation if "the applicable guideline range is in Zone A of the Sentencing Table"); *id.* § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."). The Government thus maintains that the sentencing court actually calculates the applicable guideline range when it applies Part A of Chapter Five during this penultimate step.

In the ultimate step of applying the Guidelines, the Application Instructions direct a sentencing court to assess, inter alia, whether Part K of Chapter Five warrants any departure from the guideline range. *See* USSG § 1B1.1(i). The Application Notes currently define a "departure" as the "imposition of a sentence *outside the applicable guideline range*" or, for purposes of an Overrepresentation Departure, the "assignment of a criminal history category other than the otherwise applicable criminal history category, in order to effect a sentence *outside the applicable guideline range*." *Id.* § 1B1.1 cmt. n.1(E)

(2008) (emphasis added).[9] The Government posits that the Application Instructions and the accompanying definition of "departure" bolster its contention that a sentencing court determines a defendant's "applicable guideline range" before granting an Overrepresentation Departure.

The Government thus contends that the Application Instructions, taken together, demonstrate that Munn is ineligible for a reduced sentence under § 3582(c)(2). According to the Government, the sentencing court determined Munn's "applicable guideline range" *after* applying the Career Offender Provision — and *before* granting the Overrepresentation Departure. The Government asserts that all departures are outside the applicable guideline range, rendering the Overrepresentation Departure a departure *from* (rather than a departure *to*) the applicable guideline range. Under this scenario, the fact that the sentencing court might have relied on the Crack Guidelines in selecting the extent of the Overrepresentation Departure is of no moment, for Munn's "applicable guideline range" was the range determined under the Career Offender Provision. Because Amendment 706 had no effect on that Provision, the Government contends that Munn is ineligible for a sentence reduction.

The Eighth Circuit's recent decision in *United States v. Tolliver* supports the Government's position. *See* 570 F.3d 1062 (8th Cir. 2009). There, Tolliver had pleaded guilty to a crack offense, and his PSR recommended a guideline range of 262 to 327 months, predicated on his career offender status. Nonetheless, the Government recommended, pursuant to the plea agreement, that the sentencing court select the guideline range (188 to 235 months) that would have applied but for Tolliver's career offender designation, and the court ultimately

---

[9]In 2003, the Sentencing Commission revised the Guidelines to include its definition of "departure." *See* USSG Supp. to App. C, Amend. 651 (2003). When Munn was sentenced in 2001, the Guidelines did not define a "departure."

imposed a 188-month sentence. Following the adoption of Amendment 706, Tolliver moved for a reduced sentence under § 3582(c)(2). The district court denied Tolliver's request, however, ruling that he was ineligible for a sentence reduction because the amended Crack Guidelines did not alter his status as a career offender.

On appeal, the Eighth Circuit affirmed, concluding that the district court lacked any authority to reduce Tolliver's sentence. *See Tolliver*, 570 F.3d at 1067. As the court of appeals explained, Tolliver's applicable guideline range, for purposes of § 3582(c)(2) and the Policy Statement, "was established after the [sentencing] court determined that [his] corresponding guideline range as a career offender was 262-327 months, but before the court departed from that range." *Id.* at 1066. In reaching this conclusion, the court explained that "any post-departure guideline range that the [sentencing] court might have relied upon in determining the extent of Tolliver's departure was not the 'applicable guideline range.'" *Id.* The Eighth Circuit acknowledged the contrary ruling of the Second Circuit in *McGee*, but posited that the *McGee* decision had ignored the Application Instructions, which the Eighth Circuit interpreted as showing that a defendant designated as a career offender is ineligible for a reduced sentence — even if he is then granted an Overrepresentation Departure. *See id.* In short, the Eighth Circuit concluded that the designation of a defendant as a career offender precludes a sentence reduction under § 3582(c)(2), even if the sentencing court ultimately predicated the defendant's sentence on the Crack Guidelines.[10]

---

[10]The Government, of course, relies extensively on the Eighth Circuit's decision in *Tolliver*. Notably, however, that court — in concluding that all departures are departures from the applicable guideline range — attempted to resolve an issue not presented by the facts before it, for the sentencing court there had not granted an Overrepresentation Departure. Indeed, the Eighth Circuit — apparently aware of this critical absence — also concluded that the defendant was ineligible because his sentence "was explicitly based on a stipulation between the parties, and not on a sentencing range that had subsequently been lowered." *Tolliver*, 570 F.3d at 1067 (internal quotation marks and alteration omitted). Thus, its criticism of the Second Circuit's ruling in *McGee* appears to be little more than dicta.

## C.

Having carefully assessed this matter, we are constrained to agree with the Second and Eleventh Circuits. That is, a defendant's career offender designation does not bar a § 3582(c)(2) sentence reduction based on Amendment 706 if (1) the sentencing court granted an Overrepresentation Departure from the career offender guideline range, and (2) the court relied on the Crack Guidelines in calculating the extent of the departure. Because those conditions are satisfied in this instance, the district court was authorized under § 3582(c)(2) to reduce Munn's sentence.

## 1.

As an initial matter — and contrary to the Government's contention — the Sentencing Guidelines do not compel the conclusion that a sentencing court must determine a defendant's applicable guideline range *before* granting an Overrepresentation Departure. Rather, the Application Instructions indicate that, when the sentencing court granted Munn's request for an Overrepresentation Departure, it departed *to* the applicable guideline range for purposes of § 3582(c)(2) and the Policy Statement.

Most importantly, the Application Instructions direct a sentencing court to make any Overrepresentation Departure before calculating the applicable guideline range. Thus, after the sentencing court has applied Chapters Two and Three of the Guidelines, it must "[d]etermine the defendant's criminal history category as specified in Part A of Chapter Four" and "[d]etermine from Part B of Chapter Four any other applicable adjustments." USSG § 1B1.1(f). Because the court cannot calculate the applicable guideline range without first determining the defendant's criminal history category, it follows that the court has yet to arrive at the applicable guideline range when it reaches this step of calculating the criminal history category, a point that the Government concedes. *See* Br.

of Appellee 13 ("[The Application Instructions] provide[ ] that a guideline range is determined in Part A of Chapter Five . . . after determining the criminal history category and accounting for other adjustments in Chapter Four."). Accordingly, only after applying Parts A and B of Chapter Four can a sentencing court calculate the defendant's applicable guideline range under Chapter Five. *See* USSG § 1B1.1(g) (requiring sentencing court to "[d]etermine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined above").

Of note, Guidelines section 4A1.3, which authorizes the Overrepresentation Departure, is contained in Part A of Chapter Four. Notwithstanding that placement within the Guidelines, the Government would have us conclude that the Sentencing Commission intended for a sentencing court to apply section 4A1.3 only *after* determining the defendant's applicable guideline range under Chapter Five. Because of section 4A1.3's placement, however, the Commission most likely intended for the court to grant an Overrepresentation Departure *before* determining the applicable guideline range, as part of its calculation of the criminal history category. Indeed, it would make little sense for a sentencing court to apply all of Chapter Four, except for an assessment of the applicability of an Overrepresentation Departure, only to return to that issue after determining the defendant's applicable guideline range from Chapter Five. At that point, if it found an Overrepresentation Departure was warranted, the court would have to recalculate "the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category." USSG § 1B1.1(g). Rather, the Application Instructions' plain terms indicate that the sentencing court should apply all of Chapter Four, including any Overrepresentation Departure under section 4A1.3, to calculate the defendant's criminal history category. As a result, the Overrepresentation Departure, under the Application Instruc-

tions, is a departure *to*, as opposed to a departure *from*, the applicable guideline range.[11]

### 2.

The Government understandably emphasizes the Guidelines' current definition of a "departure," which suggests that an Overrepresentation Departure is a departure *from* the applicable guideline range. *See* USSG § 1B1.1 cmt. n.1(E) (2008). This definition, however, was only added to the Guidelines in 2003, as part of Amendment 651. *See* USSG Supp. to App. C, Amend. 651 (2003). Hence, the Government seeks to explain Munn's 2001 sentencing by relying on a definition inserted into the Guidelines more than two years later. As the Guidelines manual under which Munn was sentenced did not define a "departure," Amendment 651's definition of that term offers no assistance to a deconstruction of Munn's original sentencing.[12]

Moreover, because we must apply the Guidelines edition in effect when Munn was sentenced, *see* USSG § 1B1.11(a), the Government is not entitled to rely, to Munn's detriment, on

---

[11]The Sentencing Commission did not place the Overrepresentation Departure in Chapter Five of the Guidelines. Part K of that Chapter, entitled "Departures," authorizes a sentencing court to impose a sentence outside the applicable guideline range in certain circumstances. *See, e.g.*, USSG § 5K1.1 (authorizing departure when defendant provides substantial assistance). Part K, however, makes no reference to an Overrepresentation Departure. As a result, a sentencing court properly adhering to the Application Instructions may grant an Overrepresentation Departure only as part of Chapter Four, which the court applies *before* determining the applicable guideline range. We are thus unpersuaded by the Eighth Circuit's conclusion in *Tolliver* that the Application Instructions effectively define all departures as being outside the applicable guideline range.

[12]The defendant in *Tolliver* was likewise sentenced well before the Sentencing Commission revised the Guidelines to include the current definition of a "departure." *See* 570 F.3d at 1064–65. The Eighth Circuit, however, failed to explain how it found a 2003 definition useful in determining how Tolliver had been sentenced years earlier.

the after-the-fact definition of "departure," unless one of two conditions is satisfied: (1) the Sentencing Commission designated Amendment 651 for retroactive application; or (2) Amendment 651 was a "clarifying" — as opposed to a "substantive" — amendment. *See United States v. Capers*, 61 F.3d 1100, 1109 (4th Cir. 1995).[13] Because the Commission did not designate Amendment 651 for retroactive application, its applicability in this matter depends on whether it is a "clarifying," as opposed to a "substantive," amendment. And, as our Judge Wilkins explained, an amendment that conflicts with circuit precedent is a substantive amendment, even if it "is designed merely to elucidate the original intent of the Commission." *United States v. Goines*, 357 F.3d 469, 474 (4th Cir. 2004).

When the Sentencing Commission adopted Amendment 651 in 2003 and thereby defined an Overrepresentation Departure, the Commission did more than simply clarify the Guidelines: It effected a significant change in the law of this and nearly every other circuit. Prior to Amendment 651, several circuits (including ours) had concluded that a sentencing court, in applying Guidelines section 4A1.3 to a defendant designated as a career offender, was free to depart both horizontally (to a lower criminal history category) as well as vertically (to a lower offense level). *See supra* note 8. Following

---

[13] A clarifying amendment "merely clarifies what the Commission deems the guidelines to have already meant," changing "nothing concerning the legal effect of the guidelines." *Capers*, 61 F.3d at 1109 (internal quotation marks omitted). Because a clarifying amendment works no substantive change in the operation of the Guidelines, a court must give such an amendment effect on appeal, "even when the sentencing court uses an edition of the guidelines manual that predated adoption of the amendment." *United States v. Goines*, 357 F.3d 469, 474 (4th Cir. 2004) (citing USSG § 1B1.11(b)(2)). A substantive amendment, on the other hand, alters the Guidelines' legal effect. *Capers*, 61 F.3d at 1110. As a result, an appellate court is not entitled to apply a non-retroactive substantive amendment adopted after the Guidelines edition used at a defendant's sentencing. *See Goines*, 357 F.3d at 474.

the Commission's adoption of Amendment 651, however, the definition of the Overrepresentation Departure — in conjunction with that Amendment's alterations to section 4A1.3 — specifies that a sentencing court, in granting such a departure, may assign only a lower criminal history category. *See United States v. Grier*, 585 F.3d 138, 143 (3d Cir. 2009) ("[T]he inclusion of criminal history category in the definition without mention of offense level expresses the Commission's intent to preclude offense level departures under [section 4A1.3]."). Thus, Amendment 651's definition of a departure, when applied to a career offender, "reflect[s] [a] new policy choice[ ] by the Commission" and necessarily changed the law in this circuit, thereby rendering that portion of the amendment substantive. *Goines*, 357 F.3d at 474. We are therefore, under our precedent in *Capers*, not entitled to give effect in this appeal to Amendment 651's definition of a departure. *See* 61 F.3d at 1110.

Finally, if we were to deem Amendment 651 relevant, the Guidelines would be rendered ambiguous on this point, as the Application Instructions indicate that an Overrepresentation Departure is to be made before calculating the applicable guideline range, while the commentary to those instructions — through its loose usage of the phrase "applicable guideline range" — arguably suggests otherwise. The better course in that situation would be to adhere to the specific, well-defined chronology of the Application Instructions in determining when a sentencing court calculates the applicable guideline range. *See Stinson v. United States*, 508 U.S. 36, 38 (1993) (observing that guideline commentary that "is inconsistent with, or a plainly erroneous reading of, that guideline" is not authoritative). Indeed, in the face of any such ambiguity, we would be *obliged* to apply the rule of lenity and resolve the conflict in the defendant's favor. *See United States v. Santos*, 128 S. Ct. 2020, 2025 (2008) ("[The] venerable rule [of lenity] . . . vindicates the fundamental principle that no citizen should be held accountable for a violation of a statute whose commands are uncertain, or subjected to punishment that is

not clearly prescribed."); *see also United States v. Cutler*, 36 F.3d 406, 408 (4th Cir. 1994) ("[T]he rule [of lenity] may be applied in the context of the Sentencing Guidelines . . . .").

3.

As the foregoing discussion demonstrates, we are left with the Application Instructions' plain text, which specifies that a sentencing court applies all of Chapter Four — including section 4A1.3 — *before* calculating a defendant's applicable guideline range. Therefore, when a court grants an Overrepresentation Departure, the defendant's applicable guideline range is *not* predicated on his career offender designation. Accordingly, an Amendment 706 sentence reduction is not barred where the sentencing court, following an Overrepresentation Departure, based the defendant's ultimate sentence on the Crack Guidelines. This rule not only flows from the text of the Application Instructions, it also promotes the specific objective of Amendment 706: To provide relief to an offender who was disadvantaged by the Crack Guidelines' 100-to-1 sentencing disparity.

Here, there is a strong indication that the sentencing court relied on the Crack Guidelines in calculating Munn's final sentence, for the 60-month Overrepresentation Departure resulted in a sentence that, prior to the section 5K1.1 substantial assistance departure, fell squarely within Munn's otherwise-applicable Crack Guideline range. That the court made no explicit reference to the Crack Guidelines does not compel us to conclude that it did not rely on those Guidelines in sentencing Munn. Such a connection need not be explicitly articulated, particularly in situations such as this, where the only logical explanation for the extent of the court's Overrepresentation Departure — indeed, the *only* explanation, as the Government offers no alternative — is that the departure was correlated to the Crack Guidelines.

Because Munn was thus burdened by the severe ratio that Amendment 706 sought to correct, he is eligible to pursue a

sentence reduction under § 3582(c)(2). The district court therefore erred when it concluded that it lacked authority to consider the merits of Munn's motion for a reduced sentence. In such circumstances, we vacate the judgment and remand so that the court can determine whether to award such relief. *See Goines*, 357 F.3d at 478 ("[Section 3582(c)(2)] is subject to the discretion of the district court.").

## IV.

Pursuant to the foregoing, we vacate the judgment of the district court and remand for such other and further proceedings as may be appropriate.

*VACATED AND REMANDED*

DUNCAN, Circuit Judge, dissenting:

I must respectfully dissent from the majority's holding in this case. Contrary to its conclusions, 18 U.S.C. § 3582(c)(2) does not authorize a sentence reduction here because Amendment 706 to the United States Sentencing Guidelines "does not have the effect of lowering the defendant's applicable guideline range." U.S. Sentencing Guidelines Manual § 1B1.10(a)(2)(B) (2009) [hereinafter "USSG"].* Appellant Raeford Munn's applicable guideline range of 262-327 months would not have been lowered by Amendment 706 because his total offense level of 34 was calculated independently from USSG § 2D1.1(c), the only section changed by Amendment 706. *See* USSG Supp. to App. C, amend. 706

---

*Under 18 U.S.C. § 3582(c)(2), the district court may reduce a sentence based on Amendment 706 only "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3585(c)(2). The applicable policy statement provides: "A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if . . . [Amendment 706] does not have the effect of lowering the defendant's applicable guideline range." USSG § 1B1.10(a)(2).

(2007). Even though the district court downwardly departed from that range under USSG §§ 4A1.3 and 5K1.1, and even assuming that the court considered section 2D1.1(c) when calculating this departure, still Munn's applicable guideline range of 262-327 months from which the court departed would not have been lowered by Amendment 706. I must therefore respectfully dissent.

The majority reaches a different conclusion by reasoning that the district court could not have departed from Munn's applicable guideline range of 262-327 months because USSG § 4A1.3 precedes Chapter 5, where Munn's applicable guideline range was finally determined. In doing so, the majority misinterprets both USSG §§ 4A1.3 and 1B1.1. Captioned "Application Instructions," section 1B1.1 provides that courts are to apply the provisions of the Manual in the following order:

> (a) Determine, pursuant to § 1B1.2 (Applicable Guidelines), the offense guideline section from Chapter Two (Offense Conduct) applicable to the offense of conviction. *See* § 1B1.2.

> (b) Determine the base offense level and apply any appropriate specific offense characteristics, cross references, and special instructions contained in the particular guideline in Chapter Two in the order listed.

> (c) Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B, and C of Chapter Three.

> . . .

> (f) Determine the defendant's criminal history category as specified in Part A of Chapter Four. Deter-

mine from Part B of Chapter Four any other
applicable adjustments.

(g) Determine the guideline range in Part A of Chap-
ter Five that corresponds to the offense level and
criminal history category determined above.

(h) For the particular guideline range, determine
from Parts B through G of Chapter Five the sentenc-
ing requirements and options related to probation,
imprisonment, supervision conditions, fines, and res-
titution.

(i) Refer to Parts H and K of Chapter Five, Specific
Offender Characteristics and Departures, and to any
other policy statements or commentary in the guide-
lines that might warrant consideration in imposing
sentence.

USSG § 1B1.1 (2000). Because these instructions mention
Part A of Chapter 4 before Part A of Chapter 5, the majority
concludes that "the Application Instructions direct a sentenc-
ing court to make any Overrepresentation Departure [under
USSG § 4A1.3] before calculating the applicable guideline
range." Maj. Op. at 16. I believe this interpretation to be
incorrect for two reasons.

First, USSG § 4A1.3 itself belies the majority's conclusion.
Captioned "Adequacy of Criminal History Category (Policy
Statement)," that section in the 2000 edition provides: "If reli-
able information indicates that the criminal history category
does not adequately reflect the seriousness of the defendant's
past criminal conduct or the likelihood that the defendant will
commit other crimes, *the court may consider imposing a sen-
tence departing from the otherwise applicable guideline
range*." USSG § 4A1.3 (2000) (emphasis added). This lan-
guage clearly assumes that section 4A1.3 should be applied
while determining what sentence to impose *after* having cal-

culated the applicable guideline range, and not while determining the criminal history category before having calculated the applicable guideline range. The contrary interpretation, illogically, gives the sentencing court no applicable guideline range from which to depart.

Second, USSG § 1B1.1 does not support the majority's conclusion. Subsection (f) of that section does not state, "Apply Part A of Chapter 4," but rather, "Determine the defendant's criminal history category as specified in Part A of Chapter Four." USSG § 1B1.1(f). Given the language quoted above, USSG § 4A1.3 does not involve calculating a criminal history category but instead involves imposing a particular sentence. Thus, subsection (f) does not in fact require applying USSG § 4A1.3 before proceeding to Chapter 5. Instead, the relevant instruction does not come until subsection (i), which provides: "Refer to . . . any other policy statements or commentary in the guidelines that might warrant consideration in imposing sentence." USSG § 1B1.1(i). Thus, given the language of USSG §§ 1B1.1 and 4A1.3, I would find that the Commission did not intend for the court to grant an Over-representation Departure before determining the applicable guideline range.

I would affirm for these reasons alone. However, even assuming that the majority correctly interpreted the guidelines, this case should still be remanded for the district court to clarify whether Munn's sentence was based on USSG § 2D1.1(c), the only section changed by Amendment 706. *See, e.g.*, *United States v. Sidella*, 469 F.2d 1079, 1081 (4th Cir. 1972) (remanding the sentence for clarification); *United States v. Mintz*, 276 F. App'x 334, 336 (4th Cir. 2008) (same). The majority assumes that Munn's sentence was based on USSG § 2D1.1(c) because (1) the district court chose to depart 60 months from the bottom of the career offender range (262-327 months), and because (2) the resulting sentence (202 months) fit squarely within what otherwise would have been Munn's applicable guideline range (188-235

months). Yet, when determining the extent of departure under USSG § 4A1.3, the district court could easily have considered a different criminal history category and/or offense level rather than the base offense level provided under section 2D1.1(c). *See* USSG § 4A1.3 ("In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable."). For example, the district court could have departed from criminal history category VI to criminal history category of III and still reached the same guideline range of 188-235 months. If it had done so, Munn's sentence would not be based on USSG § 2D1.1(c). *Cf. United States v. Wilson*, No. 08-15102, 2009 WL 2952154, at *1 (11th Cir. Sept. 16, 2009). Given the ambiguous record before us, we should simply decline to assume that Munn's sentence was based on USSG § 2D1.1(c) and instead, remand the matter to afford the district court the opportunity to clarify the bases of its sentencing decisions.

Because I do not believe that the guidelines, read either textually or holistically, support the majority's interpretation, and because even if that were not the case the record does not support the assumptions it makes about the district court's conclusions, I must respectfully dissent.