ROGERS, Circuit Judge,
dissenting.
The Sentencing Guidelines should be interpreted, if the words can fairly be so read, to permit resentencing when a prop *388 erly applied Guideline that affected the length of a sentence is later retroactively reduced. When two Guideline calculations were properly used at two different steps of the sentencing determination process to determine a defendant’s original sentence, no policy supports permitting resentencing only if the first, but not if the second, calculation would have been different under a retroactive amendment. It is hard to imagine why the Sentencing Commission would adopt such a policy. The syntax of the operative policy statement language does not require such a limit; indeed, it cuts the other way. Under the policy statement, there must have been a lowering of “the defendant’s applicable guideline range.” U.S.S.G. § 1B1.10(a)(2)(B). The words most naturally mean “a guideline range [properly] applied to the defendant.” The words do not require that there be only one such range. By analogy, if a sport rule provides for a penalty if “the player’s foot steps out of bounds,” English syntax does not require that the rule apply only to the right foot or the left foot. The clear meaning of “the player’s foot” is “a foot of the player.” In short, because the Sentencing Commission retroactively lowered the Guideline range that the district court properly applied to Pembrook so as to affect his sentence, the requirements of the statute and the operative policy statement were fulfilled, and the district court had the authority to resentence Pembrook.
Daryl Pembrook pled guilty to possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). His base offense level under U.S.S.G. § 2D1.1 (1997) was 34, reflecting the fact that his offense involved between 150 and 500 grams of crack cocaine. At Pembrook’s initial sentencing, the district court determined that Pembrook qualified as a career offender, increasing his offense level to 37. After a three-point reduction for acceptance of responsibility, Pembrook’s offense level was 34. The district court explicitly noted that, absent the career offender determination, Pembrook would have had an offense level of 31. Regardless of whether he was a career offender, Pembrook’s criminal history category was VI. The district court determined that Pembrook’s career offender offense level and his criminal history category “call[ed] for a sentence of 262 to 327 months imprisonment.” (This calculation was not affected by the later retroactive amendment to the Guidelines.) Pembrook’s attorney argued that Pembrook’s criminal history over-represented the seriousness of his past conduct and requested that the district court follow United States v. Fletcher, 15 F.3d 553, 557 (6th Cir.1994), and approve a “downward departure from the Career Offender Status.”
The district court granted the departure, and noted, “[f]or the record,” that “if the defendant were not qualified as a Career Criminal, which he is, he would be looking at 188 to 235 months imprisonment.” That 188 to 235 month range corresponded with Pembrook’s § 2D1.1 offense level as adjusted for Pembrook’s acceptance of responsibility. Pembrook’s counsel requested a sentence at the low end of this range, but the court stated that, given Pembrook’s history, there was “no basis for the low end of the Guidelines.” After hearing from the defendant, the court determined that Pembrook also did not deserve to be sentenced at a level as high as “the middle of the Guidelines,” which was the district court’s normal practice. The court thus sentenced Pembrook to 200 months’ imprisonment, near the 25th percentile of Pembrook’s § 2D1.1 crack cocaine Guideline range. Amendment 706 amended U.S.S.G. § 2D1.1 retroactively, such that Pern *389 brook’s § 2D1.1 range would have been 151 to 188 months’ imprisonment if Amendment 706 had predated Pembrook’s sentencing. A sentence at approximately the same percentile within the amended, 151 to 188 month, range would be 160 months’ imprisonment.
Following Amendment 706 and Pembrook’s motion for resentencing, the district court possessed the authority to re-sentence Pembrook. Under 18 U.S.C. § 3582(c)(2), a district court may modify a defendant’s sentence if two conditions are satisfied. First, the defendant must have been “sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o).” This condition has been satisfied in the present case because the district court based Pembrook’s sentence on the crack cocaine Guideline range applicable to Pembrook absent Pembrook’s career offender status. Second, the sentence reduction must be “consistent with applicable policy statements issued by the Sentencing Commission,” here U.S.S.G. § 1B1.10. That policy statement requires that an amendment listed in U.S.S.G. § 1B1.10(c) “have the effect of lowering the defendant’s applicable guideline range.” U.S.S.G. § 1B1.10(a)(2)(B). This condition has also been satisfied because Amendment 706 — which is listed in § 1B1.10(c)— lowered the Guideline range that the district court actually applied to Pembrook after the court determined that the career offender range was not appropriate in Pembrook’s case.
The phrase “applicable guideline range” as used in U.S.S.G. § 1B1.10 is most logically read to include any Guideline range properly applied to a defendant so as to affect his sentence. In this case, after the district court departed from the career offender Guideline range, the court clearly applied the § 2D1.1 crack cocaine Guideline range to Pembrook, expressly deciding that Pembrook deserved a sentence above the bottom of that range but below the range’s median. As the majority reasons, the words “applicable guideline range” sensibly refer to the U.S.S.G. § 1B1.1(g) step of the Guidelines Application Instructions. But this does not mean that the phrase does not also include a Guideline range applied at the later U.S.S.G. § 1B1.1(i) step, dealing with departures. There is no reason to limit the phrase “applicable guideline range” to step (g), when a Guideline range is actually and legitimately “applied” as well at step (i).
Moreover, the Guidelines provide no global definition of the phrase “applicable guideline range,” and a number of Guidelines provisions suggest that this phrase is not intended to have such a specific or limited meaning. The clearest provision indicating that the phrase “applicable guideline range” has multiple uses — including referring to Guideline ranges applied after a departure — is U.S.S.G. § 4A1.3(b)(2)(A). Section 4A1.3 is entitled “Departures Based on Inadequacy of Criminal History Category,” and subsection (b)(1) provides that if a “defendant’s criminal history category substantially over-represents the seriousness of the defendant’s criminal history ... a downward departure may be warranted.” As an example, a defendant might have an offense level of 25 and a criminal history category of III, resulting in a pre-departure Guideline range of 70 to 87 months. If that defendant’s criminal history category substantially overrepresented the seriousness of the defendant’s prior criminal history, however, the district court would be entitled to depart downward from that range to account for that over-representation. Subsection (a)(4)(A) encourages courts to “determine the extent of a departure under this subsection by using, as a refer *390 ence, the criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant’s.” The district court thus might determine that criminal history category I more accurately reflects the seriousness of the defendant’s criminal history. But subsection (b)(2)(A) limits the authority of district courts to depart: “A departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited.” Thus, for the hypothetical defendant, a departure below the bottom of the range for offense level 25 and criminal history category I — 57 months — would be prohibited by subsection (b)(2)(A). In the context of this example, the Guidelines refer to the post-departure range as an “applicable guideline range,” apparently because the district court in the situation in which that provision is binding would have determined that the post-departure range applies to the defendant. This court has also previously characterized a departure pursuant to U.S.S.G. § 4A1.3 as being “granted in the context of calculating the applicable Guidelines range.” United States v. Asher, 239 Fed.Appx. 180, 182 n. 1 (6th Cir.2007); see also United States v. O’Georgia, 569 F.3d 281, 289, 296 (6th Cir.2009). Thus § 4A1.3 indicates that the phrase “applicable guideline range” sometimes refers to post-departure Guideline ranges.
Further, U.S.S.G. § 5G1.1 and United States v. Johnson, 564 F.3d 419 (6th Cir. 2009), jointly refute the notion that the phrase “applicable guideline range” refers to the range calculated at a single point in the process described by U.S.S.G. § 1B1.1. Section lBl.l(g) instructs sentencing courts to “[djetermine the guideline range in Part A of Chapter Five that corresponds to the offense level and criminal history category determined [by sections (a) — (f) of § 1B1.1].” Only then, in subsection (h), does a district court consult “Parts B through G of Chapter Five” to determine “the sentencing requirements and options related to probation, imprisonment, supervision conditions, fines, and restitution.” Consideration of a defendant who is subject to a mandatory minimum sentence reveals that the Guidelines and our precedents describe both “the guideline range” mentioned by § 1B1.1(g) and “the sentencing requirements” mentioned by § lBl.l(h) as a defendant’s “applicable guideline range.” As an example, in Johnson, the defendant had an offense level of 36 and a criminal history category of III, resulting in a Guideline range of 235 to 293 months. 564 F.3d at 420. The defendant was also subject to a mandatory minimum sentence of 240 months. Id. Section 5G1.1 provides that district courts may impose a sentence “at any point within the applicable guideline range, provided that the sentence ... is not less than any statutorily required minimum sentence.” Thus, for the defendant in Johnson, the district court could impose any sentence within the defendant’s 235 to 293 month range so long as the sentence was above 240 months.[1] The Sentencing Commission in § 5G1.1, then, uses the phrase “applicable guideline range” to apply to the defendant’s Guideline sentence prior to any modification for mandatory minimum sentences. But in Johnson we explicitly considered whether the phrase “applicable guideline range” referred to the 235 to 293 month range or to the 240 to 293 month range, and concluded under the circumstances of that case that “[wjhere a man *391 datory minimum sentence exceeds the otherwise applicable Guidelines range — as it would were [the defendant] to be resentenced today — it replaces that Guidelines range.” 564 F.3d at 423. Thus, Johnson used the phrase “applicable guideline range” to refer to the range computed after applying U.S.S.G. § 5G1.1. The fact that there are two uses of the phrase “applicable guideline range” under a combination of the Guidelines and our precedents refutes the theory that “applicable guideline range” may only mean, throughout the Guidelines, the range calculated in a particular step.
This court has also previously referred to a post-departure guideline range as an “applicable guideline range,” further undermining the contention that this phrase is a term of art meaning only the range calculated at the § 1B1.1(g) step. See, e.g., United States v. Shafer, 573 F.3d 267, 271-72 (6th Cir.2009) (“After ... awarding a one-level reduction pursuant to the Government’s motion for departure, the district court recalculated Shafer’s offense level to be 41, with a criminal history category of I. The applicable guidelines range is 324 to 405 months....”); O’Georgia, 569 F.3d at 289, 296 (explaining that the district court departed upwards and increased the defendant’s criminal history category pursuant to U.S.S.G. § 4A1.3, which, with other adjustments, “more than doubled the applicable Guidelines range”); United States v. Austin, Nos. 08-5637, 08-5640, 2009 WL 89648, at *2 (6th Cir. Jan.15, 2009) (“In the court’s view, Defendant provided substantial assistance to the Government, justifying a three level offense reduction from the offense level twelve to offense level nine. As a result, Defendant’s applicable Guidelines range was in Zone B.... ”); United States v. Harden, 124 Fed.Appx. 429, 429 (6th Cir. 2005) (“Due to the downward departure, the applicable guideline range was 188 to 235 months.”).
Absent such a singular meaning, courts should interpret any use of “applicable guideline range” both in the context in which the phrase is used and light of the rule of lenity. “‘[T]he policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended.’ ” United States v. Boucha, 236 F.3d 768, 774 (6th Cir.2001) (quoting Bifulco v. United States, 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980)). “ ‘This policy embodies the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.’ ” Id. (quoting United States v. Bass, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971)) (internal quotation marks omitted). The rule of lenity properly applies to interpretations of the Guidelines. Id. at 775. “[T]he touchstone of the rule of lenity is statutory ambiguity.” Bifulco, 447 U.S. at 387, 100 S.Ct. 2247 (internal quotation marks omitted). In the present circumstance, there is no compelling reason to read the phrase “applicable guideline range” to exclude the Guideline range that the district court actually applied to Pembrook. If the district court had departed and sentenced Pembrook to a term of imprisonment above the bottom but below the median of Pernbrook’s § 2D1.1 crack cocaine Guideline range after the promulgation of Amendment 706, then Pembrook would have received a sentence in the range of 151 to 170 months’ imprisonment rather than the 200 month sentence he did receive. Pernbrook’s present sentence reflects the 100-1 crack cocaine to cocaine disparity rejected by Amendment 706, and thus the policy rationale underlying Amendment 706 and the Sentencing Commission’s decision to *392 apply that amendment retroactively also support resentencing Pembrook.
This conclusion accords with the decisions reached by the Fourth and Second Circuits in United States v. Munn, 595 F.3d 183 (4th Cir.2010), and United States v. McGee, 553 F.3d 225 (2d Cir.2009), though those courts reached their decisions using different reasoning. Because neither Munn nor McGee relied upon the argument that the phrase “applicable guideline range” does not have a singular meaning within the Guidelines, the majority’s responses to the arguments made in Munn and McGee do not contradict a straightforward reading of “the defendant’s applicable guideline range” as any guideline range properly applied to the defendant.
I would therefore remand for resentencing.

. The requirement that sentences must generally be within Guideline ranges applied, of course, only prior to United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).